Filed 3/28/17
Prior 1/18/17 opinion vacated

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----


| | |
|---|---|
| ANTHONY PIZARRO, | C077594 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2012-00116836-PR-TR-FRC) |
| v. | |
| MELISSA P. REYNOSO, as Trustee, etc., | |
| Defendant and Respondent; | |
| KAREN BARTHOLOMEW, | |
| Defendant and Appellant; | |
| MIGUEL REYNOSO, | |
| Real Party in Interest and Respondent. | |


APPEAL from a judgment of the Superior Court of Sacramento County, Matthew J. Gary, Judge. Affirmed in part and reversed in part with directions.

William P. Roscoe, III for Plaintiff and Appellant Anthony Pizarro.

D.B. Hill and Dennis B. Hill for Defendant and Appellant Karen Bartholomew.

Law Offices of Jerilyn Paik, Jerilyn Paik, and Stephanie R. Poston for Defendant and Respondent.

1

Miguel Reynoso, in pro. per., for Real Party in Interest and Respondent.

This acrimonious family squabble erupted over the property of the deceased patriarch and spilled over into the courts. The patriarch-settlor appointed defendant Melissa P. Reynoso (a granddaughter of the settlor) as trustee. In this proceeding, the trial court determined Reynoso was the most reliable and credible of the family members. The trial court found that other family members were not credible.

Reynoso sold real property of the trust to Karen Bartholomew (a daughter of the settlor). Plaintiff Anthony Pizarro (a grandson of the settlor) filed a petition for relief against Reynoso concerning the sale of the real property. The court denied the petition and ordered Pizarro and others to pay the trust's attorney fees and costs.

On appeal, Pizarro contends the trial court erred in finding that Reynoso acted properly as trustee. However, he fails to make a focused, organized, and coherent argument for why we must reverse the order. We therefore conclude he forfeited the argument.

Also on appeal, Pizarro and Bartholomew contend that the award of attorney fees and costs against them was improper. We conclude that the attorney fees and costs were properly and lawfully imposed under the trial court's equitable power over the trust, except to the extent the trial court made Pizarro and Bartholomew personally liable for attorney fees and costs, rather than liable solely from their shares of the trust assets.

We therefore reverse the award of attorney fees and costs to the extent it imposed personal liability. In all other respects, we affirm.

BACKGROUND

*Facts and Procedure*

Willis Earl Jensen died in 2011, leaving his property, including real property, in a trust. His children included plaintiff Keith Jensen (who is not a party to this appeal) and defendant and appellant Karen Bartholomew. Bartholomew has two children: plaintiff and appellant Pizarro and defendant and respondent Reynoso. Reynoso was named trustee.

The real property at issue in this proceeding is located on El Verano Avenue in Elverta. Reynoso sold the property to Bartholomew, as permitted by the trust.

Pizarro and Jensen filed petitions under Probate Code section 17200 against defendants Reynoso (as trustee) and Bartholomew. Principally, the petitions alleged that Reynoso breached her duties as trustee and that the sale of the property to Bartholomew must be set aside. After trial, the court denied the petitions and awarded attorney fees and costs, which award we discuss in more detail later.

*Statement of Decision*

Because there remains on appeal a degree of dispute concerning the facts, we relate the statement of decision, which is the fact finder's conclusion concerning the facts. We quote (without quotation marks) the main body of the statement of decision:

1. The principal controverted issue presented herein is whether the sale of the property located at 9021 El Verano Avenue, Elverta, CA, by the Trustee MELISSA REYNOSO, to KAREN BARTHOLOMEW, was a "sham sale" as alleged by Petitioners ANTHONY PIZARRO and KEITH JENSEN. It was not. The court finds that the sale was a valid sale and made in good faith by the Trustee REYNOSO to the beneficiary KAREN BARTHOLOMEW.

2. The two primary witnesses to the transactions involved in the sale were MELISSA REYNOSO and KAREN BARTHOLOMEW. The court finds MELISSA

3

REYNOSO'S testimony to be credible and convincing. The court finds KAREN BARTHOLOMEW'S testimony to be, in large part, incredible and unconvincing.

3. On or about February 14, 2010, decedent and Settlor, Willis Earl Jensen, executed his Will. On or about February 16, 2010, he executed his Living Trust. For reasons that became obvious at trial, Mr. Jensen appointed his granddaughter, Trustee MELISSA REYNOSO, as Successor Trustee to succeed him at his death, rather than appointing any of his children or other grandchildren.

4. The Living Trust, by reference to the Last Will and Testament of Willis Earl Jensen executed February 14, 2010, states,

"Property located at 9021 El Verano Avenue, Elverta, Ca. 95626 (parcel #202-0020-012-0000) to be sold to (My Daughter) Karen Bartholomew or any of her children at 100k below appraised value. If Karen or her children are unable to purchase property then property to be sold for fair market value. After all debts and fees have been satisfied monies are to be equally divided to my children, except as noted; If any of my children are deceased then their share gets equally divided among their children and Marilyn Kimbrell's share gets equally divided among her children."

5. The El Verano property appraised for $365,000. Therefore, the property could be sold to either BARTHOLOMEW, REYNOSO, or PIZARRO for $265,000. The decision of who to sell the property to was left to Trustee REYNOSO.

6. Settlor's intent was for either BARTHOLOMEW, or REYNOSO, or PIZARRO, to buy the property. The decision of who to sell it to was left to Trustee REYNOSO.

7. Pursuant to the terms of the Trust, Trustee REYNOSO could have sold the El Verano property directly from the Trust to herself. (Estate of Carrie Hazeltine Thompson (1958) 50 Cal.2d 613, 616.) For reasons stated in her testimony, she did not. Instead, she sold the property to her mother, BARTHOLOMEW, for $265,000.

4

8. Prior to sale, Trustee REYNOSO gave proper Notice(s)[1] as required by law.

9. Prior to the sale, BARTHOLOMEW represented orally, and by confirming letter from her counsel, that she expected a personal injury settlement to come in that would be in excess of the $265,000 purchase price. Trustee REYNOSO agreed to help her mother BARTHOLOMEW purchase the property. Trustee REYNOSO and her husband, Miguel, applied for a loan from Wells Fargo Bank, which loan was approved. BARTHOLOMEW would repay REYNOSO when her personal injury settlement monies came in. The sale transactions included the following:

a. On October 23, 2012, Trustee REYNOSO executed a Grant Deed(s) transferring El Verano from the Trust to herself and her husband Miguel. Concurrently, she executed the corresponding Note and Deed(s) of Trust to WFB [Wells Fargo Bank]. This was done because the Wells Fargo Loan was not a Trust obligation; it was an individual loan to REYNOSO and her husband.

b. The WFB loan closed on or about October 23, 2012, and the loan funds of approximately $262,000[2] were immediately deposited into Trust on behalf of BARTHOLOMEW. The Trust was whole.

c. On October 25, 2012, BARTHOLOMEW executed her Promissory Note for $265,000 to REYNOSO and her husband Miguel. This was consistent with the agreement REYNOSO and BARTHOLOMEW had by which REYNOSO would help BARTHOLOMEW purchase the property by obtaining a loan in REYNOSO's name

---

**1** The trial court added plurals in parentheses because the El Verano property straddled the Sacramento-Placer county line and required separate paperwork for each side.

**2** There is no dispute on appeal concerning the discrepancy between the $262,000 loan and the $265,000 sale price.

(because BARTHOLOMEW could not qualify for a loan on her own) and then BARTHOLOMEW would pay REYNOSO back when BARTHOLOMEW'S personal injury settlement monies came in.

  d. On October 26, 2012, after the WFB loan proceeds were secured and placed in the Trust, REYNOSO and her husband Miguel executed Trust Transfer Deed(s) transferring the property from themselves back to Trustee REYNOSO.

  e. On October 26, 2012, concurrent with the Trust Transfer Deed(s) identified in d. above, Trustee REYNOSO executed a Trust Transfer Deed(s) transferring the property from the Trust to BARTHOLOMEW.

  10. These transactions occurring, for all practical purposes, concurrently, constitute a valid sale of the El Verano property from the Trustee to BARTHOLOMEW, all in accordance with the provisions of the Trust. There is nothing "sham" about this transaction as Petitioners PIZARRO and JENSEN allege. The Trust received the net proceeds of sale of approximately $262,000 and title to the property passed from the Trust to BARTHOLOMEW. That is a "sale". The proceeds of the sale remain in the Trust today.

  11. From the point of sale to BARTHOLOMEW, the El Verano property was no long[er] Trust property. The cash from the sale now sitting in the Trust is Trust property. What occurred between BARTHOLOMEW and REYNOSO thereafter is "outside" of the Trust. Trustee REYNOSO did not breach any duty owed as a Trustee herein.[3]

---

**3** Although the trial court did not so find, it appears that Bartholomew was unable to pay on the loan from Reynoso and her husband, whether from the proceeds of Bartholomew's personal injury action or any other source. As a result, the property passed to Reynoso and her husband about 15 months after the sale of the property to Bartholomew.

## DISCUSSION

## I

### *Pizarro's Contentions as to the Merits of the Order*

While it is clear Pizarro does not like the order denying his petition, it is entirely unclear what specific argument he believes will establish the order must be reversed. The lack of clarity begins with the failure to provide a proper heading to the argument and continues in the text, where he jumps around, criticizing the order but never providing a solid foundation for an argument that we must reverse it. The lack of clarity and coherence continues with his failure to give proper due to the trial court's factual determinations. We therefore conclude Pizarro forfeited his argument the trial court's order on the merits of the controversy must be reversed.

An appellant must "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority." (Cal. Rules of Court, rule 8.204(a)(1)(B); *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830–1831, fn. 4.) Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading.

Pizarro's briefing in this case presents a scenario similar to the briefing in *Landa v. Steinberg* (1932) 126 Cal.App. 324 (*Landa*), in which case the court found the appellant forfeited most of his arguments because he did not sufficiently apprise the court of what argument he was trying to make. In *Landa,* the court wrote: "We have before us in this case, which involves an appeal from the judgment in favor of plaintiff as well as from an order denying a motion for new trial, an appellant's brief of 106 pages. The headings appearing therein are as follows: 'Statement of Facts', 'Appellant's Grounds of Appeal', 'Excessive Damages', 'The Court Should have Allowed the Defendant to introduce Evidence of Compensation Insurance' and 'Defendant Demurs to Plaintiff's Complaint'. Under the second heading, 'Appellant's Grounds of Appeal', are listed

specifications of error designated by letters of the alphabet, commencing with 'a' and running to 'u'. [Current rule 8.204(a)(1)(B) of the California Rules of Court] was designed to lighten the labors of the appellate tribunals by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass. An appellant's brief which fails to comply is equally confusing to the respondent, who labors under an unwarranted handicap in attempting to understandingly reply. There is no reason—no great or insurmountable difficulty is presented by the rule—why there should not be a compliance. It may possibly be that the heading 'Excessive Damages' and the one 'The Court should have allowed the Defendants to introduce Evidence of Compensation Insurance' can be construed as a partial meeting of the requirements. For that reason we shall take note of them instead of dismissing the appeal, but treat the remainder of the brief for what it is, a presentation insufficient to require consideration or comment." (*Landa, supra,* at pp. 325-326.)

In 1933, the Supreme Court, referring to the rule discussed in *Landa*, wrote: "This rule has been in effect for many years and its requirements have been repeatedly called to the attention of the members of the bar." (*Cunnyngham v. Mason-McDuffie Co.* (1933) 218 Cal. 196, 198.)

The strength and wisdom of this rule is that it nudges and cajoles the brief writer into focusing and specifying the precise reason we must reverse the trial court's action. That did not happen here. Pizarro discusses what he perceives as problems with the order, but he fails to organize the discussion into the type of argument that leaves the court with an understanding of his position, instead of just a vague idea of his thoughts.

In Pizarro's opening brief, the part enumerating his arguments on appeal bears the following headings:

8

"III. ARGUMENT AND SUMMARY OF ARGUMENT

"A. Summary of Argument

"B. Standards of Review

"C. Statement of Decision and Argument

"IV. BAD FAITH LITIGATION

"V. CONCLUSION"

These headings are entirely inadequate to raise any issue on appeal concerning the merits of the order. For that reason, Pizarro forfeited any issue he intended to raise on appeal but failed to raise properly according to the Rules of Court. (Cal. Rules of Court, rule 8.204(a)(1)(B).)

As did the appellant in *Landa*, Pizarro also includes a list of his arguments, not as headings but just as a list:

"1. The uncontested facts, both as stipulated and found, constitute multiple breaches of fiduciary duties by the trustee.

"2. The uncontested facts, both as stipulated and found, do not constitute a sale of the El Verano real property by the trustee to Karen Batholomew in accordance with the provisions of the Willis Earl Jensen Trust.

"3. The uncontested facts, both as stipulated and found, establish that [Pizarro] did not commence and conduct litigation (i) that was unfounded and frivolous, or (ii) in bad faith.

"4. The trial court error in assessing fees and costs against [Pizarro] personally beyond any charge of an interest in the trust? [*Sic*]."

This list precedes a discussion of the standard of review and then a muddle of various statements of fact and law under the heading "Statement of Decision and Argument." It is not our responsibility to act as counsel for Pizarro and attempt to arrange his arguments coherently. In addition to the failure to provide proper headings, Pizarro's failure to provide coherent organization to his arguments forfeits consideration

9

of those arguments on appeal. (See *Evans v. CenterStone Development Co.* (2005) 134 Cal.App.4th 151, 165.)

Pizarro's failure to present complete and coherent headings and legal arguments is significant because, as the appellant, it is his burden to overcome the presumption on appeal that the underlying order is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [judgment of lower court presumed correct; error must be affirmatively shown].) Pizarro's manner of briefing does not overcome that presumption.

In any event, what we can decipher of Pizarro's arguments is without merit.

Pizarro claims that (1) Reynoso, as trustee, did not sell the El Verano property to Bartholomew but instead to herself and her husband and (2) selling the property to herself and to her husband violated the provisions of the trust. Neither of these claims has merit.

First, Pizarro's argument that Reynoso (as trustee) sold the El Verano property to herself and to her husband and not to Bartholomew fails. While the financing arrangement was creative, it was honest. The flexibility inherent in the trust allowed for how Reynoso accomplished the sale to Bartholomew, including the financing for the sale. As the trial court noted, the transactions made within the short four-day period, all with the aim to provide financing for the purchase to Bartholomew, which financing she could not otherwise obtain, were, when viewed reasonably and practically, concurrent transactions constituting a sale of the El Verano property by the trust to Bartholomew. Pizarro offers no authority for the proposition the only way the trial court could view this creative financing arrangement is transaction by transaction when it determined whether it constituted a sale of the property to Bartholomew. It would elevate form over substance to reject the financing arrangement as a violation of trust provisions when the transactions achieved an end permissible under the trust. (See *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 95 [elevating form over substance unjustified].)

And second, even if Pizarro were correct that the trial court erred by finding Reynoso sold the El Verano property to Bartholomew and that Reynoso instead sold the

10

El Verano property to herself and her husband, Pizarro's argument would still not prevail because he provides no authority that including Reynoso's husband as a buyer violated the trust provision allowing the trustee to sell the property to Bartholomew, Reynoso (in her personal capacity), or Pizarro. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408 [appellant forfeits claim of error by failing to cite authority].) We view it as rather unremarkable that, had Reynoso decided to sell the property to herself, her husband could be included in the transaction as a buyer. Such a sale would still be to Reynoso. Nonetheless, Pizarro argues, with no cited authority, that Reynoso "sold the property to herself and her husband at variance with the terms of the trust." That legal conclusion is not self-evident. And, without authority, the argument is unpersuasive.

One last element of Pizarro's argument bears comment. In his opening brief, Pizarro makes various factual allegations concerning the transactions, which allegations are at odds with the trial court's determinations as the finder of fact. For example, Pizarro claims Reynoso "[p]ressured and induced [Bartholomew] to sign papers and declarations asserting she brought [*sic*] the trust property by secretly advising she could live in the property with [Reynoso] and her family." As support for this "fact," Pizarro cites only to the record of Bartholomew's testimony, even though the trial court expressly found Bartholomew's testimony "in large part, incredible and unconvincing."

Such disregard for the facts as found by the trial court also results in a forfeiture of arguments on appeal. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)

Pizarro forfeited any and all arguments on appeal as to the merits of the trial court's order concerning the sale of the El Verano property.

## II

### *Award of Attorney Fees*

The trial court exercised its equitable power over trusts within its jurisdiction by ordering attorney fees and costs against Bartholomew and Pizarro. The court's equitable power includes the power to charge attorney fees and costs against a beneficiary's share

11

of the trust if that beneficiary, in bad faith, brings an unfounded proceeding against the trust. (*Rudnick v. Rudnick* (2009) 179 Cal.App.4th 1328, 1335 (*Rudnick*).) On appeal, Bartholomew and Pizarro contend the court exceeded its equitable powers in ordering attorney fees and costs. We conclude the trial court's equitable power over the trust supports its award of attorney fees and costs from the beneficiaries' share of the trust assets, but the same equitable power does not support making Bartholomew and Pizarro personally liable for attorney fees and costs to be paid for with funds that are not trust assets.

The trial court's award of attorney fees stated: "JENSEN, BARTHOLOMEW, and PIZARRO are jointly and severally liable for REYNOSO['s] attorneys' fees and costs incurred herein. These fees shall first be charged against the estate shares of JENSEN and BARTHOLOMEW due to them from the Trust. To the extent that REYNOSO's fees and costs exceed such shares, JENSEN, PIZARRO, and BARTHOLOMEW, jointly and severally, shall be personally liable for the unpaid portion of the fees."

The trial court relied on *Rudnick* when it ordered attorney fees and costs against Bartholomew and Pizarro. In *Rudnick*, three beneficiaries of a trust filed objections to a petition to approve a sale of real property by the trustee after a majority of the beneficiaries voted to approve the sale. The trial court overruled the objections and approved the sale. (*Rudnick, supra,* 179 Cal.App.4th at pp. 1330-1332.) After approval of the sale, the trustee filed a motion to charge the trust's attorney fees and costs against the objectors' share of the trust's assets, based on the objector's bad faith in objecting to the petition. (*Id.* at p. 1332.) The trial court granted the motion because the objectors' actions were not in good faith but instead were to disrupt the sale. The objectors "created unnecessary delays and asserted disingenuous arguments causing the [trust] to incur significant legal expenses." (*Id.* at pp. 1332-1333.)

12

The *Rudnick* objectors appealed, and the Court of Appeal affirmed. The *Rudnick* court rejected the objectors' contention that the trial court could not impose an award of attorney fees and costs because there was no statutory authority for the award. The court concluded that the lower court did not award attorney fees and costs under its statutory supervisory powers over the action, but instead under the court's "broad *equitable* powers that a probate court maintains over the trusts within its jurisdiction." (*Rudnick, supra,* 179 Cal.App.4th at p. 1333, original italics.)

The holding of *Rudnick* was summarized in that decision as follows: "[W]hen a trust beneficiary instigates an unfounded proceeding against the trust in bad faith, a probate court has the equitable power to charge the reasonable and necessary fees incurred by the trustee in opposing the proceeding against that beneficiary's share of the trust estate." (*Rudnick, supra,* 179 Cal.App.4th at p. 1335.)

The *Rudnick* court relied on *Estate of Ivey* (1994) 22 Cal.App.4th 873 (*Ivey*), where the Court of Appeal similarly held that the trial court could exercise its equitable powers over trusts by charging the trust's attorney fees and costs against the trust share of those who instituted an unreasonable and bad faith action against the trust.

In *Ivey*, several beneficiaries of a trust challenged the actions of the trustee by filing objections to the trustee's account. (*Id.* at p. 877.) The trial court held that the challenge was frivolous and in bad faith and therefore ordered the trustee to pay the trust's attorney fees and costs out of the challengers' share of future trust distributions. (*Id.* at p. 878.)

The *Ivey* challengers appealed, and the Court of Appeal upheld the trial court's exercise of its equitable powers. The *Ivey* court reasoned that the trial court's inherent equitable power over trusts allowed it to protect the trust assets for the benefit of the unoffending beneficiaries by charging the trust's attorney fees and costs against the trust interest of the offending beneficiaries, those who frivolously and in bad faith instituted an action to challenge the actions of the trust. (*Ivey, supra,* 22 Cal.App.4th at pp. 882-886.)

13

A.     *Bartholomew*

Bartholomew's challenge to the award of attorney fees and costs is that she did not (1) institute a proceeding in this matter, (2) take an unfounded position, and (3) act in bad faith.  We conclude that the record supports the trial court's exercise of its equitable power to charge attorney fees and costs against Bartholomew's share of the trust.  However, to the extent the trial court required Bartholomew personally to pay attorney fees and costs over and above the funds available from her share of the trust proceeds, the court exceeded its equitable powers.  The latter conclusion is discussed in the next part in connection with Pizarro's contention concerning the award.

1.     Background

Concerning the award of fees against Bartholomew, the court wrote the following in the statement of decision:

"Bad Faith of BARTHOLOMEW:  BARTHOLOMEW wanted to buy El Verano even before Settlor died.  Prior to Settlor's death, BARTHOLOMEW and Settlor discussed a purchase price of $400,000.  After Settlor's death, and pursuant to the terms of the Trust, Trustee REYNOSO agreed to sell the property to BARTHOLOMEW.  At the time, BARTHOLOMEW fully understood that she was buying the property for $265,000, that REYNOSO was securing the loan, and that BARTHOLOMEW would pay REYNOSO back on the Note when BARTHOLOMEW's personal injury monies came in.  BARTHOLOMEW was fully informed and fully on board with the entire plan through October 2013.  The property was, in fact, sold to BARTHOLOMEW.  When the litigation began, BARTHOLOMEW 'sided' with REYNOSO.  She did so because what REYNOSO was saying was, in fact, the truth.  But somewhere along the way, and this court believes that it had to do, at least in part, with JENSEN, BARTHOLOMEW turned on REYNOSO.  BARTHOLOMEW turned so badly that she began, knowingly and willingly, offering false testimony in Declaration, at Deposition, and at trial, all in an

14

effort to manipulate the outcome of the litigation. Knowingly offering false evidence in litigation is a 'bad faith' litigation tactic.

"Legal Authority for Fees: Rudnick v. Rudnick (2009) 179 Cal.App.4th 1328."

2. Analysis

The trial court's equitable power over trusts gives the court authority to charge attorney fees and costs against a beneficiary's share of the trust estate if the beneficiary, in the words of *Rudnick*, "instigate[ed] an unfounded proceeding against the trust in bad faith." (*Rudnick, supra*, 179 Cal.App.4th at p. 1335.) Bartholomew argues that attorney fees and costs cannot be charged against her share of the trust estate because (1) she did not bring a proceeding in this matter, (2) she did not take an unfounded position, (3) she did not act in bad faith, and (4) she is not a party to this action. We find no merit in the arguments.

First, Bartholomew argues that she did not instigate or bring an action against the estate and therefore cannot be charged for attorney fees and costs under *Rudnick*. However, we conclude that whether Bartholomew instigated or brought an action against the estate is not material because the court's broad equitable powers over trust assets are sufficient to justify an award of attorney fees and costs against any trust beneficiary who takes an unfounded position and litigates in bad faith, causing the trust to incur fees and costs.

In *Rudnick*, the offending beneficiaries were the ones who instigated the action against the trust, objecting to the sale of trust assets. Therefore, it was appropriate in the court's holding to refer to that fact, stating, "when a trust beneficiary instigates an unfounded proceeding against the trust in bad faith," attorney fees and costs may be charged against the offending beneficiary's share of the trust estate. But we do not read that language as limiting the broad equitable powers of the court to circumstances in which the offending beneficiary instigated the action. The analysis in *Rudnick* supports our position.

15

The *Rudnick* court justified its holding by quoting *Ivey*, as follows: " ' "Courts having jurisdiction over trust administration have the power to allocate the burden of certain trust expenses to the income or principal account and not infrequently do so in connection with accountings or suits relating to the administration of the trust. Sometimes this authority is stated in statutory form, but it exists as part of the *inherent jurisdiction of equity to enforce trusts*, secure impartial treatment among the beneficiaries, and to carry out the express or implied intent of the settlor." [Citation.] "Where the expense of litigation is caused by the unsuccessful attempt of one of the beneficiaries to obtain a greater share of the trust property, the expense may properly be chargeable to that beneficiary's share." [Citations.]' ([]*Ivey, supra,* 22 Cal.App.4th at p. 883, italics added.)" (*Rudnick, supra,* 179 Cal.App.4th at p. 1334.)

Nothing in this analysis, with which we agree, requires instigation of an action against the trust by the offending beneficiary as a prerequisite to charging attorney fees and costs against the offending beneficiary's share of the trust estate. Instead, the court has broad equitable powers to protect the trust estate, and charging attorney fees and costs against the offending beneficiary's share of the estate regardless of whether the offending beneficiary instigated the action against the trust is consistent with the court's broad equitable powers.

Second, as the trial court held, Bartholomew took an unfounded position in supporting the contention that the sale of the El Verano property was a sham sale. As we discussed above, the transactions involved in the sale of the El Verano property to Bartholomew allowed her to obtain financing she otherwise would not have been able to get. Viewed reasonably and practically, the virtually concurrent transactions constituted a sale of the El Verano property by the trust to Bartholomew and, in any event, Reynoso was free to sell the property to herself. Furthermore, basing one's assertions on false testimony, as did Bartholomew here, is, by definition, taking an unfounded position.

16

Third, Bartholomew acted in bad faith. She testified falsely in her attempt to get the trial court to invalidate the sale of the property.

Fourth and finally, Bartholomew is a party to this action. She claims she cannot be charged attorney fees and costs in this proceeding because she is merely a percipient witness, not a party. That claim is frivolous. She was named as a defendant in Pizarro's petition, appeared at trial representing herself, and argued her position to the court.

The trial court's broad equitable power to protect trust assets supported the court's charge of the trust's attorney fees and costs against Bartholomew's share of the trust.

B.      *Pizarro and Bartholomew–Personal Liability*

On the other hand, the award against Pizarro was not justified by the trial court's equitable powers over the trust because the award is against him personally, not against a share of the trust. He does not have a share of the trust. Likewise, imposing personal liability for attorney fees and costs on Bartholomew, in addition to charging her share of the trust assets, was not justified by the court's equitable powers over the trust.

1.      Background

Concerning the award of fees against Pizarro, the court wrote the following in the statement of decision:

"PIZARRO['S] complaint is, and has been, that the property should have been sold to him instead of BARTHOLOMEW. At trial, PIZARRO testified that '[he] wanted to buy the property', that, 'in his mind', and 'according to the will and trust', he had 'the right' to buy the property, that '[he] knew that his mo[ther] [BARTHOLOMEW] had no money', and that '[he] didn't have no chance to buy it', because 'they never responded to nothing I wrote them or nothing.' [Citation to reporter's transcript.] He further complained that '[REYNOSO] didn't sell [the property] to [BARTHOLOMEW] – [his] mother, [REYNOSO] sold it to herself pretty much. That's the way [he] takes[s] it.' '[His] position is [REYNOSO] used [his] mom as a front to buy it.' [Citation to reporter's transcript.]

17

"The latter complaint, that 'REYNOSO sold the property to herself using his mom as a front to buy it', is based on the transaction identified in paragraphs 9.a. through e. [of the statement of decision]. Throughout the litigation, PIZARRO has referred to this as a 'sham sale'. As stated above, this was not a 'sham sale' and no reasonable person could conclude the same. Neither is this a 'conspiracy' between REYNOSO and BARTHOLOMEW, or 'self-dealing' by REYNOSO, as alleged by PIZARRO in his Amended Petition filed April 18, 2013. There is no evidence that 'Trustee [REYNOSO] really intended to sell the property to herself and her husband' as alleged by PIZARRO. There is no evidence that BARTHOLOMEW was a 'straw buyer' as alleged by PIZARRO. Again, if REYNOSO's true intent was to buy the property herself, she could have easily, and legally, done so straight away. This was obvious to any reasonable person who chose to view the circumstances with reason. What REYNOSO was doing is exactly what she said she was doing; selling the property to her mother BARTHOLOMEW just as the Settlor had expressed in the Trust.

"Pizarro simply did not like the fact that the property was sold to someone other than himself. PIZARRO did not have 'a right' to buy the property as he maintained throughout the litigation. Who to sell the property to, as between BARTHOLOMEW, REYNOSO, and PIZARRO, was left to REYNOSO. PIZARRO complains that the [sale] to BARTHOLOMEW is wrong because '[he] knew that his mo[ther] [BARTHOLOMEW] had no money'. True. BARTHOLOMEW had to borrow the money from REYNOSO. But then, PIZARRO 'had no money' too. He had to borrow from his step-mother Violet. PIZARRO complains that '[REYNOSO] didn't sell [the property] to [BARTHOLOMEW] – [his] mother, [REYNOSO] sold it to herself pretty much; that [REYNOSO] used [his] mom as a front to buy it.' Factually, legally, and logically, PIZARRO's position is wrong.

18

"From the start, PIZARRO had no basis in fact, law, or reason to litigate. Yet, he chose to commence and maintain, through trial, a 'sham sale' theory. Like JENSEN, this theory is nothing more than legal 'gotcha'. This is 'bad faith' litigation.

"Further, the court finds that, like BARTHOLOMEW, PIZARRO offered false testimony at trial. The court does not believe PIZARRO when he testified that he intended to buy El Verano and live there. In fact, PIZARRO was intending to buy the property and 'flip it' for the $100,000 (or more) gain. PIZARRO borrowed $265,000 from his step-mother Violet. The $265,000 was deposited into a joint account held by PIZARRO and Violet at Ump[q]ua Bank. There was no note, no deed of trust, no fixed or firm agreement concerning this 'financing' or payment. PIZARRO had been living in the Colfax area with his immediate family for the past 13 or 14 years. REYNOSO testified that JENSEN told her that PIZARRO intended to buy the property and sell it. When asked on cross-examination, 'Did you tell your Uncle Keith [JENSEN] at some point you were going to buy El Verano and you would flip it?', PIZARRO answered, 'I don't – I don't believe telling him that, I don't recall telling him, you know.' [Citation to reporter's transcript.] This testimony was less than compelling. PIZARRO and REYNOSO both testified that PIZARRO asked REYNOSO to buy his interest out for $7,500.00 because '[he] didn't want dealing with them' (JENSEN and others). In fact, PIZARRO was intending to 'flip' the property for the $100,000 gain. But because the Settlor clearly wanted the property to stay in the family, and this would occur if the property was sold to BARTHOLOMEW or REYNOSO, but would not occur if sold to PIZARRO, PIZARRO changed his position to suit his litigation tactics and then offered false testimony at trial. That, too, is 'bad faith'.

"Legal Authority for Fees: Rudnick v. Rudnick (2009) 179 Cal.App.4th 1328."

Here, it is undisputed that, without a right to purchase the El Verano property and no other distribution from the trust, Pizarro is not a trust beneficiary.

19

### 2. Analysis

Neither *Rudnick* nor any other case supports the reach of the trial court's award of attorney fees and costs beyond a beneficiary's share of the trust. The effect of *Rudnick* and *Ivey* is to allow the trial court, in its equitable jurisdiction over trusts, to direct that the share of the trust assets that would be distributed to an offending beneficiary would instead be used to pay attorney fees and costs to the benefit of the trust, specifically to the benefit of those trust beneficiaries who did not improperly cause the trust to expend funds for attorney fees and costs. Ordering Pizarro and Bartholomew to potentially pay attorney fees and costs out of their own pockets is beyond the equitable power of the court over trusts because the court has no equitable jurisdiction over that money. We therefore strike the part of the award assessing personal liability for attorney fees and costs against Pizarro and Bartholomew.

### C. *On Remand*

Reynoso contends, even if we cannot uphold the award of attorney fees and costs under the court's equitable powers over trusts, we should affirm based on the court's statutory power to impose an award of attorney fees and costs under Probate Code sections 15642, subdivision (d) and 17211, subdivision (a). We decline because the trial court did not consider the issues specific to ordering attorney fees and costs under those provisions.

Probate Code section 15642, subdivision (d) requires not only a finding of bad faith but also consideration of the settlor's intent as to a petition for removal of the trustee.[4] Probate Code section 17211, subdivision (a) allows an award of attorney fees

---

[4]    Probate Code section 15642, subdivision (d) provides: "If the court finds that the petition for removal of the trustee was filed in bad faith and that removal would be contrary to the settlor's intent, the court may order that the person or persons seeking the removal of the trustee bear all or any part of the costs of the proceeding, including reasonable attorney's fees."

20

and costs against a beneficiary if the beneficiary brought a contest against the trustee's account without reasonable cause and in bad faith.[5]

The trial court relied exclusively on its equitable power over trusts and did not invoke the statutory power and procedures and make the determinations under any statutory means of imposing an award of attorney fees and costs. We therefore reverse and remand as to personal liability for attorney fees and costs. On remand, the trial court may consider whether to impose an award of attorney fees and costs under statutory authority.[6]

## DISPOSITION

The part of the order making Bartholomew and Pizarro personally liable for attorney fees and costs to the extent that Reynoso's attorney fees and costs exceed the trust shares of Jensen and Bartholomew is reversed. In all other respects, the order is affirmed, and the matter is remanded for further proceedings consistent with this opinion.

---

[5]   Probate Code section 17211, subdivision (a) provides: "If a beneficiary contests the trustee's account and the court determines that the contest was without reasonable cause and in bad faith, the court may award against the contestant the compensation and costs of the trustee and other expenses and costs of litigation, including attorney's fees, incurred to defend the account. The amount awarded shall be a charge against any interest of the beneficiary in the trust. The contestant shall be personally liable for any amount that remains unsatisfied."

[6]   This appeal and our disposition do not affect the award of attorney fees and costs against Keith Jensen, who did not perfect his appeal by paying the statutory filing fee. (Cal. Rules of Court, rule 8.140(b).)

21

Reynoso is awarded her costs on appeal against Bartholomew only. Bartholomew and Pizarro will bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(4).)


                                                                         NICHOLSON      , Acting P. J.


We concur:


        MAURO            , J.


        MURRAY          , J.