Filed 4/3/25  Main Street Taxpayer Assn. v. Town of Mammoth Lakes CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Mono)

----

| | |
|---|---|
| MAIN STREET TAXPAYER ASSOCIATION, | C100379 |
| Plaintiff and Appellant, | (Super. Ct. No. 22UCM82) |
| v. | |
| TOWN OF MAMMOTH LAKES et al., | |
| Defendants and Respondents. | |
| MAIN STREET TAXPAYER ASSOCIATION, | C100449 |
| Plaintiff and Appellant, | (Super. Ct. No. 23UCM12) |
| v. | |
| TOWN OF MAMMOTH LAKES et al., | |
| Defendants and Respondents. | |

Under the Property and Business Improvement District Law of 1994 (PBID Law; Sts. & Hy. Code,[1] § 36600 et seq.), business owners can petition their city to form a business improvement district (§ 36621).  If the city agrees to form the district, the city will levy

_____

[1] Undesignated statutory references are to the Streets and Highways Code.

1

assessments against businesses in the district to fund services, improvements, or both that benefit these businesses. (§ 36625.) These funds can be used to promote local tourism, install public restrooms, and provide security, among other things. (*Ibid.*; see §§ 36606, 36610.)

The Town of Mammoth Lakes (Mammoth) is one city that has formed a business improvement district under the PBID Law. It formed its district, called the Mammoth Lakes Tourism Business Improvement District (the District), in 2013 for a five-year term. It has since renewed the District in 2018 for a second five-year term and in 2023 for a third five-year term. Mammoth's resolutions forming and renewing the District explain that assessments would be levied against tourism businesses in the District and the resulting funds would then be used to benefit these businesses. These resolutions also explain that a nonprofit, Mammoth Lakes Tourism, would administer these funds.

This appeal involves two consolidated cases that largely focus on the use of these funds. Since 2019, Main Street Taxpayer Association (MSTA) has sued Mammoth and others three times, alleging, among other things, that they have misused these funds. All three suits have ended in judgments of dismissal. We affirmed the judgment in the first of these suits three years ago in a nonpublished opinion in *Main Street Taxpayer Association v. Town of Mammoth Lakes* (Nov. 15, 2021, C091546). We now consider MSTA's appeal of the judgments in its two more recent suits. We will affirm.

BACKGROUND

MSTA has sued Mammoth three times in recent years. It first sued in 2019, naming as defendants Mammoth, Mammoth Lakes Tourism, Mammoth Lakes Mountain Ski Area, Alterra Mountain Company, Mammoth Lakes Chamber of Commerce, and several individuals. MSTA alleged, among other things, that Mammoth misused funds from District assessments, unlawfully formed the District, and enacted an invalid transient occupancy tax. But the trial court found its claims time-barred, and we affirmed on appeal. (*Main Street Taxpayer Association v. Town of Mammoth Lakes*, *supra*, C091546.)

MSTA sued twice more in 2022, filing both a complaint and petition for writ of mandate. In its complaint, MSTA named the same defendants as in its earlier suit apart from a few changed individuals. Before any defendant responded, MSTA filed a first amended complaint, alleging, among other things, that Mammoth misused funds from District assessments and enacted an invalid transient occupancy tax. Mammoth and Mammoth Lakes Tourism demurred. The court tentatively sustained the demurrer, finding MSTA failed to show it had standing to sue, but granted MSTA leave to amend. MSTA then filed a second amended complaint, alleging in a single cause of action that Mammoth misused funds from District assessments. Mammoth and Mammoth Lakes Tourism again demurred. The trial court sustained the demurrer, dismissed the second amended complaint without leave to amend, and entered judgment against MSTA. The court reasoned that MSTA lacked standing to sue, in part because it did not pay any District assessment.[2]

In its writ petition, MSTA named Mammoth and five of its council members as defendants and sought a court order directing Mammoth to set a hearing for disestablishing the District. MSTA relied on section 36670. That section provides that a city must set a hearing for disestablishing a district formed under the PBID Law in one of two circumstances. First, it must do so "[i]f the city council finds there has been misappropriation of funds, malfeasance, or a violation of law in connection with the management of the district." (§ 36670, subd. (a)(1).) Second, it must do so if it receives, within the designated time period, a "written petition of the owners or authorized representatives of real property or the owners or authorized representatives of businesses in the district who pay 50 percent or more of the assessments levied." (*Id.*, subd. (a)(2).)

---

[2] The trial court issued three separate demurrer rulings. First, it tentatively sustained the demurrer to MSTA's first amended complaint and granted MSTA leave to amend. Then, it sustained the demurrer to this complaint, not realizing that, at this point, MSTA had already filed its second amended complaint. Finally, after realizing it had misfiled the second amended complaint, it considered the demurrer to the second amended complaint and sustained this demurrer too.

MSTA alleged that Mammoth needed to hold a disestablishment hearing under this statute because Mammoth Lakes Tourism had misused funds from District assessments.

Mammoth and the other defendants demurred. The trial court tentatively sustained the demurrer. It found MSTA failed to state a cause of action for several reasons, including because it failed to show it had standing, but granted MSTA leave to amend to address this failure. MSTA then filed an amended petition for writ of mandate and complaint, naming as defendants Mammoth, four Mammoth council members, and two Mammoth employees. It sought, as before, a court order directing Mammoth to set a hearing for disestablishing the District. It also raised five new claims for damages, alleging, among other things, that Mammoth enacted an invalid transient occupancy tax and unlawfully approved District assessments in 2013, 2018, and 2023. Mammoth and the other defendants again demurred.

The trial court sustained the demurrer, dismissed the amended pleading without leave to amend, and entered judgment against MSTA. The court found MSTA's writ claim failed for four reasons: (1) MSTA failed to show that Mammoth had a duty to hold a disestablishment hearing, reasoning that Mammoth had a duty to hold this hearing only if it first found impropriety in the District's management and MSTA never alleged that Mammoth found such impropriety; (2) MSTA lacked standing to seek this hearing because it did not pay any District assessment; (3) MSTA could not compel a disestablishment hearing even it had standing, because only assessees paying 50 percent or more of District assessments could do so under section 36670, subdivision (a)(2); and (4) MSTA could not compel a disestablishment hearing even it had standing, because it failed to show that it asked Mammoth to disestablish the District in the time period required under section 36670, subdivision (a)(2). The court further found MSTA's damages claims failed for four reasons: (1) MSTA improperly added these claims without leave of court; (2) the claims are time-barred; (3) MSTA is collaterally estopped from raising these claims based on our earlier

4

decision in *Main Street Taxpayer Association v. Town of Mammoth Lakes*, *supra*, C091546; and (4) MSTA lacked standing to raise these claims.[3]

MSTA appealed both judgments. We consolidated these cases for purposes of appeal.

DISCUSSION

I

*Appeal No. C100379*

We start with MSTA's appeal involving its second amended complaint. MSTA's appeal in this case is odd. It says it has "no objection" to the trial court's ruling sustaining the demurrer to this complaint, "agrees with the trial court Judgment as stated," and "is not asking for any 'reversal.' " So why the appeal? MSTA says it wants us to order respondents to respond to its initial complaint filed in this case, which it calls the "forgotten" complaint. In its view, respondents needed to respond to all filed complaints— meaning, the initial complaint, the first amended complaint, and the second amended complaint.

MSTA is mistaken. " 'It is well established that an amendatory pleading supersedes the original one, which ceases to perform any function as a pleading.' " (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884.) " 'Such amended pleading supplants all prior complaints.' " (*Ibid.*) Applying this principle here, that means respondents needed to respond only to MSTA's most recent amended complaint. They did that. They filed a demurrer to MSTA's first amended complaint, which at the time, was the most recent amended complaint. They then, after MSTA filed a second amended complaint, filed a

---

[3] As with the other suit, the trial court issued three separate demurrer rulings. First, it tentatively sustained the demurrer to MSTA's writ petition and granted MSTA leave to amend. Then, it sustained the demurrer to the writ petition, not realizing that, at this point, MSTA had already filed its amended writ petition and complaint. Finally, after realizing it had misfiled the amended writ petition and complaint, it considered the demurrer to this pleading and sustained this demurrer too.

5

demurrer to that complaint too. They had no need to respond to the superseded original complaint, which "cease[d] to perform any function as a pleading." (*Ibid.*)

MSTA's arguments in favor of a contrary result are unpersuasive. First, it contends the first and second amended complaints did not successfully amend the original complaint, so the original complaint remains outstanding. That is so, it says, because the two amended complaints failed to meet the criteria for triggering the relation-back doctrine. MSTA, however, misunderstands this doctrine. The relation-back doctrine applies when an amended complaint " '(1) rest[s] on the same general set of facts, (2) involve[s] the same injury, and (3) refer[s] to the same instrumentality, as the original one.' " (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 244, italics omitted.) But these are not criteria that a party must satisfy to amend a complaint, as MSTA appears to believe. They are instead conditions that must be met for an amended complaint to "relate[] back, for purposes of the statute of limitations, to the date on which the original complaint was filed." (*Ibid.*) This doctrine offers no help to MSTA here.

Next, MSTA suggests the amended complaints are invalid because "each was filed contrary to the agreement and direction of Appellant." In support, it cites its counsel's arguments in a motion for reconsideration filed in the trial court. But MSTA cannot rely on its counsel's arguments to establish facts, for "unsworn statements of counsel are not evidence." (*In re Zeth S.* (2003) 31 Cal.4th 396, 413, fn. 11.) In any event, at the page MSTA cites, its attorney did not state that the amended complaints were filed contrary to MSTA's direction. Instead, one of its attorneys said that another of its attorneys failed to make certain amendments that the trial court requested. Nothing in this claim, however, demonstrates that the amended complaints are somehow invalid.

Lastly, appearing to depart from its initial claim that it seeks no reversal, MSTA contends the trial court wrongly denied its request to either amend its original complaint or file its original complaint as its third amended complaint. But MSTA has not shown that it ever requested to file its original complaint as its third amended complaint. And although it did request to amend its original complaint in a motion for reconsideration, it never explains

6

why the trial court erred in failing to grant its request. It simply says, without any explanation, that the trial court abused its discretion. We treat its unexplained argument as forfeited. (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 (*Tellez*) ["When an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited"].)

II

*Appeal No. C100449*

We turn next to MSTA's appeal involving its amended petition for writ of mandate and complaint, which raised one writ claim and five damages claims. MSTA contends the trial court wrongly dismissed these claims, but it never shows that the trial court committed any reversible error.

First, MSTA challenges the trial court's dismissal of its writ claim. Before turning to its argument, we start with a little background. "Code of Civil Procedure section 1085, providing for writs of mandate, is available to compel public agencies to perform acts required by law." (*People v. Picklesimer* (2010) 48 Cal.4th 330, 339.) "To obtain relief, a petitioner must demonstrate (1) no 'plain, speedy, and adequate' alternative remedy exists (Code Civ. Proc., § 1086); (2) ' "a clear, present . . . ministerial duty on the part of the respondent" '; and (3) a correlative ' "clear, present, and beneficial right in the petitioner to the performance of that duty." ' " (*Id.* at p. 340.) In this case, again, MSTA raised one writ claim. It argued that Mammoth had a duty to hold a disestablishment hearing under section 36670. But the trial court rejected this claim as a matter of law for multiple reasons, including because it found Mammoth had no ministerial duty to hold this hearing here.

In challenging the trial court's ruling, MSTA briefly argues that Mammoth had a "fiduciary duty" to hold this hearing. But it raises its argument under a heading dealing with an entirely different topic—standing. The heading in full says: "The trial court committed prejudical [*sic*] error when ignoring current 'standing' law to deny appellant's request for a writ of mandate." (Capitalization omitted.) MSTA needed, however, to raise its distinct argument concerning Mammoth's alleged duty to hold the disestablishment

7

hearing "under a separate heading or subheading summarizing the point," as required under California Rules of Court, rule 8.204(a)(1)(B). Because it failed to do so, we find it forfeited this argument. (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 ["Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading"].) And because it forfeited this argument, it has not shown that the trial court erred in dismissing its writ claim based on a lack of a ministerial duty. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 [appellant has the burden to show the trial court erred].)[4]

Second, MSTA challenges the trial court's dismissal of its claims for damages. As covered earlier, MSTA added these claims after the trial court issued a ruling tentatively sustaining Mammoth's initial demurrer. The court stated that MSTA's one claim at that time, its writ claim, failed to state a cause of action and granted MSTA leave to amend to address this failure. MSTA afterward filed an amended pleading that included new allegations to support its writ claim. It also, exceeding the scope of the court's leave, added the five damages claims. The court rejected these new claims for several reasons, including because MSTA failed to seek leave of court to add these claims. (See Code Civ. Proc., § 472, subd. (a) [absent leave of court or stipulation by the parties, a party cannot amend its pleading after the date for responding to a filed demurrer has passed].)

In opposing the trial court's ruling, MSTA generally ignores the trial court's finding that it improperly added these new claims without leave of court. It vaguely addresses this topic only when discussing this case's procedural history. Under a heading titled "revelent [*sic*] pleadings and trial court orders," (capitalization omitted) it argues the "undefined cause of action requirement and the commonality of facts and claims" allowed it to amend its writ

---

[4] We need not address MSTA's challenge to the trial court's alternative grounds for dismissing this claim, for an appellant's failure to challenge one dispositive ground is fatal to the appeal. (*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125-126.)

petition to add the new claims.  (Italics & capitalization omitted.)  It further argues it needed to add these new claims without leave of court because it wanted to challenge Mammoth's approval of new District assessments in 2023 and had only 30 days to do so.  But similar to before, because MSTA raises these arguments under a heading purporting to deal with a different topic—the case's procedural history—we find it forfeited these arguments.  (*Pizarro v. Reynoso*, *supra*, 10 Cal.App.5th at p. 179.)  We also find that it consequently failed to meet its burden to show the trial court erred in dismissing these claims.[5]

Third, MSTA argues that District assessments violate the Fifth Amendment's takings clause and unspecified "California statutory and constitution laws."  But MSTA never raised this claim in any of its pleadings.  Nor does it explain what it wants us to do with this claim now.  It simply notes that it holds these beliefs.  We disregard this unexplained argument.  (*Tellez*, *supra*, 240 Cal.App.4th at p. 1066 ["When an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited"]; see also *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997 [" 'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal' "].)

Fourth, MSTA contends the trial court used an incorrect date in its judgment.  The judgment says that a hearing on the amended petition for writ of mandate and complaint was held on October 10, 2023.  MSTA says that is wrong, noting that the trial court considered this pleading only at a later date.  It then argues that the court's listing of this incorrect date prejudicially harmed it.  We reject its argument.  We assume for purposes here that the trial court listed the wrong date.  But even so, MSTA has offered no cogent explanation for finding prejudice for this reason.  (See *Jameson v. Desta*, *supra*, 5 Cal.5th at pp. 608-609 [appellant has the burden to show "that the trial court committed an error that justifies reversal of the judgment"]; *Tellez*, *supra*, 240 Cal.App.4th at p. 1066 [finding undeveloped

---

**5**  We need not address MSTA's challenge to the trial court's alternative grounds for dismissing these claims.

argument forfeited].) Nor, in any event, can we say that the mere listing of this date was prejudicial.

Lastly, MSTA contends an addendum to the trial court's demurrer ruling served "to ignore a due process examination" (capitalization omitted) of the amended petition for writ of mandate and complaint. We struggle to understand its reasoning, but it appears to believe that the trial court violated its due process rights because it took judicial notice of certain records and then relied on these records in finding MSTA lacked standing for its writ claim. MSTA never explains, however, how these actions violated its due process rights. (See *Tellez*, *supra*, 240 Cal.App.4th at p. 1066 [finding undeveloped argument forfeited].) At any rate, even assuming the trial court wrongly relied on these records to find MSTA lacked standing, MSTA still would not to be entitled to a reversal. That is because the trial court rejected its writ claim for multiple independent reasons apart from a lack of standing, and, as covered, MSTA has not shown that the trial court erred in rejecting its writ claim based on a lack of a ministerial duty.

We end with a comment about MSTA's attorneys' conduct, which we do not make lightly. Throughout the briefing, MSTA's attorneys make speculative, unwarranted, and nonsensical claims against the trial court and opposing counsel. They claim, for instance, that the trial court either had ex parte communications with respondents or engaged in "prohibited independent fact-finding" because it cited a case that no party had cited. Courts can (and often do) perform independent legal research—which, to be clear, is not independent factfinding. They also accuse the trial court of acting as an advocate for respondents, intentionally mispresenting a material fact, being at best professionally incompetent, and violating various canons of the California Code of Judicial Ethics. They level similar claims against opposing counsel, asserting that opposing counsel is at best professionally incompetent and at worst engaging in fraudulent conduct. But they offer nothing meaningful to substantiate these claims, resting largely on their belief that the trial court and opposing counsel are wrong about the law on standing and that the trial court once cited an incorrect date. MSTA's attorneys should stop making unwarranted accusations

10

against the trial court and opposing counsel.  These accusations are unfounded, unhelpful, and unprofessional.[6]

DISPOSITION

The judgment is affirmed.  Respondents are entitled to recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

                                               /s/<br>
BOULWARE EURIE, J.

We concur:

\_\_\_\_/s/_____
EARL, P. J.


\_\_\_\_/s/_____
RENNER, J.

---

[6]  Respondents have filed a motion asking us to do one of three things:  strike parts of MSTA's reply brief, ignore these parts of the reply brief, or allow them to file a sur-reply. But because we conclude that MSTA is not entitled to the relief it seeks, even without considering respondents' motion, we find it unnecessary to consider the issues presented in this motion.  (See *Jollie v. Superior Court* (1951) 38 Cal.2d 52, 59.)