Filed 12/15/22  Roth v. City of Hermosa Beach CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MARK ROTH, | B309941 |
| Cross-complainant and Appellant, | (Los Angeles County Super. Ct. No. YC072628) |
| v. | |
| CITY OF HERMOSA BEACH et al., | |
| Cross-defendants and Respondents. | |

APPEAL from judgments of the Superior Court of Los Angeles County, Deirdre H. Hill, Judge.  Affirmed.

Alda J. Shelton for Cross-complainant and Appellant

Best Best & Krieger, Michael Jenkins and Gregg W. Kettles for Cross-defendant and Respondent City of Hermosa Beach.

Phillips, Spallas & Angstadt, Michael R. Halvorsen and Sandra L. Block for Cross-defendants and Respondents Kihn Luan Tran and Van Hong Tran, as Trustees, etc.

———————————

## FACTUAL AND PROCEDURAL BACKGROUND

This is the second appeal in this matter. (See *710 and 712 Ardmore, LLC v. Roth* (Nov. 7, 2019, B293766) [non-pub.].) We include relevant information from our prior opinion.

A. *Events Leading to Civil Lawsuit*

710 and 712 Ardmore, LLC (Ardmore) owned a duplex (Property) at 710–712 Ardmore Avenue in Hermosa Beach, California. Patti Nernberg is Ardmore's managing member and sole member. Appellant Mark Roth (Roth) owns the residential property next door at 604 8th Street.

In 2015, Ardmore pursued plans to build a two-unit condominium and submitted an application for a conditional-use permit. A condominium was an allowed use, but a conditional-use permit was required to obtain a building permit. A resolution of the Planning Commission of the City of Hermosa Beach (Planning Commission) and a public hearing were required for Ardmore to obtain approval of the conditional use.

On October 20, 2015, a public hearing was held on Ardmore's permit application, satisfying public notice requirements and allowing for public comment. That same day, the Planning Commission issued a conditional-use permit and a resolution approving the specific development plan. The resolution provides, in part: "The development and continued use of the property shall be in conformance with submitted plans received and reviewed by the Planning Commission at its meeting on October 20, 2015 . . . . The Community Development Director may approve *minor modifications* that do not otherwise conflict with the Hermosa Beach Municipal Code or requirements of this approval." (Italics added.)

3

In 2016, construction of the condominium units began. In 2017, Ardmore completed the construction of an exterior stairway to the second floor on the north side of the Property, right next to Roth's property. Roth believed the stairway violated zoning ordinances and the Hermosa Beach Municipal Code[1]. Roth hired an attorney to sue either the City of Hermosa Beach (the City) or Ardmore.

Revised plans were submitted by Ardmore and Nernberg, which the City approved on November 7, 2017.

On December 26, 2017, Roth filed a claim with the City for damages and removal of the stairs. He also asked the City not to grant a certificate of occupancy for the Property. In January 2018, Roth attended two city council meetings about his claim. The City ultimately disagreed with Roth and issued the certificate of occupancy to Ardmore in January 2018.

On January 2, 2018, Roth placed a sign viewable by a person standing on the landing of the Property stairs. The sign stated: "I have filed a complaint with the city to demolish the stairs at 712 Ardmore as an illegal intrusion into the required rear yard. If the city does not order them removed, I will sue the city and the property owner."

B.    *Ardmore's Complaint and Amended Complaint*

On January 19, 2018, Ardmore filed a civil action against Roth. In the operative first amended complaint (FAC) filed April 2, 2018, Ardmore alleged three causes of actions: 1) intentional interference with prospective economic advantage; 2) preliminary

---

[1]    Further undesignated statutory references are to the Hermosa Beach Municipal Code, unless otherwise stated.

and permanent injunction and damages; and 3) nuisance. The FAC alleged Roth interfered with Ardmore's efforts to sell the Property's two units by posting the sign to discourage buyers.

On February 22, 2018, Roth replaced the first sign with a second sign which stated: "The owner of 712 Ardmore has sued me in Torrance Superior Court Case number YC072628, to have the court rule whether the exterior stairs to 2nd floor of 712 Ardmore are illegal. If the owner loses the case, the stairs will have to be torn down and the door sealed off. Have you been informed of the lawsuit and any consequences to you including becoming part of this lawsuit?"

On March 9, 2018, the City denied Roth's claim.

On June 6, 2018, Kihn Luan Tran and Von Hong Tran—as trustees of the Tran Family Trust—purchased one of the condominium units at the Property, 712 Ardmore. We collectively refer to the new owners of 712 Ardmore as the Tran family or the Trans.

C.    *Roth's Amended Cross Complaint*

On September 6, 2018, Roth filed a cross complaint against Ardmore, the City, and the Tran family. On June 23, 2020, Roth filed the operative first amended cross complaint (FACC). Roth alleged three causes of action in his FACC: 1) mandamus against the City; 2) public nuisance against the City, the Trans, Ardmore, and newly named cross-defendant Nernberg; and 3) damages for removal of survey markers against Ardmore and Nernberg.

We recite the allegations relevant only to the mandamus and public nuisance claims before us on appeal.

1.    Mandamus Against the City

Roth alleged the recently built stair structure next to the property line between his lot and 710–712 Ardmore did not

5

comply with provisions of the conditional-use permit and development plans approved by the City in 2015 and also violated the City's zoning rules on setbacks, lot coverage, and height. Roth sought a writ of mandate to compel the City "to perform its ministerial duty to cause the [Property] to comply with the conditions approved in the grant of the Conditional-Use Permit and the zoning ordinance, by ordering the removal of the stair structure and wall and enforcing its order."[2]

Roth alleged the approved plans show the proposed grade elevation of dirt at the base of the first floor and the base of the second floor to be the same; he alleged this "means that anyone stepping out of the door and onto the landing will be stepping onto 'grade,' i.e., dirt, not onto any stair structure." This plan required "hauling and compacting" of "a large amount of new dirt to provide the approximately 8'5.5"-high 'Proposed Grade' at the second floor door." Sloping dirt would have to be placed "and compacted under the steps going down to the first floor ground level . . . to make the steps always be resting on grade." Instead, the builders built an "unapproved stair structure" with numerous

---

[2]    Title 17 of the Hermosa Beach Municipal Code (sections 17.02.010 through 17.74.120) "shall be known as the zoning ordinance." (§ 17.02.020.) The purpose of Title 17 provisions is expressly provided: "A precise land use plan for the city is adopted and established to serve the public health, safety and general welfare and to provide the economic and social advantages resulting from an orderly planned use of land resources." (§ 17.02.010.) "In interpreting and applying the provisions of this title, they shall be held to be the minimum requirement for the promotion of the public health, safety, comfort, convenience and general welfare." (§ 17.02.030.)

6

steps to a landing in front of the door on the second floor. The landing "must be reached by a sloping ramp, since no steps are shown."

In addition, the void beneath the stairs and landing was filled with wood framing and foam rather than dirt. The conditional-use permit did not permit "room under the stairs or a foam-filled room in the rear-yard setback area. . . . There should have been dirt instead of a room of any kind, pursuant to the grant[ed] . . . Conditional-Use Permit 15-10."

Roth also alleged the landing and its supporting left wall "went to within 3 [inches] of the property line," violating the five-feet rear yard setback requirement. Section 17.12.020D required every lot to have "a rear yard not less than five (5) feet in depth. The second floor can be three (3) feet from the property line." The staff report also provided that the rear yard setback requirement was five feet at the first floor and 3 feet at the second floor. The unobstructed rear yard of 712 Ardmore was only three inches wide at the first and second floor.

Roth next alleged the placement of a perimeter wall of 12 feet one and one-half inches as part of the unapproved stair structure violated the rear-yard maximum perimeter wall height of six feet set forth in the staff report. He referred to section 17.46.130, which provides that a wall or fence "not more than six feet in height may be located anywhere on the lot."

Roth then cited section 17.12.060, which provides that all buildings, including accessory structures, shall not cover more than 65 percent of the area of the lot. The Planning Commission's staff report provides the maximum lot coverage at 65 percent and that the plans submitted by Ardmore showed the project was at 64.9 percent. He alleged the calculation for the

7

building square footage failed to include the lot coverage resulting from the stair structure.  The stair structure caused the condominium project to exceed the permitted maximum of 65 percent lot coverage.

Roth alleged the City "has not ordered the violating elements removed," and instead, issued a certificate of occupancy and approved the structure "despite the non-compliance."  "The dirt/grade levels, stair structure [and its] perimeter wall, and guard-rail elements that were approved in the Revised Plans were inconsistent with, and not approved, in the Conditional-Use Permit."  These were "not minor modifications" of the approved plan.  Roth asked the trial court to order the City to remove the stair structure and wall and to enforce its removal order.  "Compelling removal of the foregoing violations . . . was a ministerial act of the City.  It had no discretion to allow the rear-yard violations of the project as-built . . . to continue."

2.    Public Nuisance Against the Trans [3]

Roth's cause of action for public nuisance was alleged on two theories—general theory of public nuisance and public nuisance per se.

The FACC alleged: The "violations of the Conditional-Use Permit and the zoning ordinance constitute a public nuisance."  The City authorized and approved "the construction that violated the Conditional-Use Permit" and "continued a condition that is an obstruction to the free use of property so as to interfere with the comfortable enjoyment of life or property."  This condition

---

[3]    The public nuisance claim incorporated by reference the permit violations in the mandamus cause of action.

8

"affects a substantial number of people at the same time and is a public nuisance."

The FACC further alleged: The "condition is also a *per se public nuisance* under . . . section 17.02.030, since the public health, safety, comfort, and general welfare have been violated." Roth suffered a "special injury to himself that is different from the harm suffered by the general public." For instance, the "required separation of his property from the Ardmore lot does not exist." Roth's bedroom window is five feet six inches away from the stairway used by the residents and guests of 712 Ardmore to reach the second-floor entrance of the condominium. "People can make noise at all hours on the stairs. . . . They can loom over [his space] on the landing and look directly into his yard . . . . They can hear what he says, see what he is doing, and take pictures of him. There is no privacy." "The seriousness of the harm outweighs the social utility of the conduct." The City "approved the public nuisance instead of ordering it abated, which it had a ministerial duty to do."

While Ardmore and Nernberg created the public nuisance, the Tran family "are continuing it." Roth sought damages for "$100 a day for every day in which the violations continue until removed, due to inconvenience and lack of privacy." If an injunction requiring the removal of the stair structure and supporting wall is not granted, Roth will "continue to suffer loss of use and enjoyment of his property."

Roth included as exhibits to the FACC: the Planning Commission's October 20, 2015 resolution approving the permit; the condominium development plans approved via the resolution; the Planning Commission's staff report; photos of the stair

9

structure and guard rail; the November 7, 2017 revised plans; and Roth's December 26, 2017 claim against the City.

D.    *Proceedings in the Trial Court*

The City and the Trans filed demurrers to the causes of action for mandamus and public nuisance, which Roth opposed. The demurrers were set to be heard on October 20, 2020.

On October 13, 2020, Roth filed an ex parte application to continue the October 20, 2020 hearing on the demurrers to November 17, 2020—the reserved hearing date on Roth's not-yet-filed motion for sanctions against the City and its counsel under Code of Civil Procedure section 128.7 for advancing a "misrepresentation to the court and waste its time on theories that are false."[4]  Roth explained that after filing his opposition to the demurrers, he received on August 31, 2020 "interrogatory responses verified by the City's Code Enforcement Official who admitted that the stairs were not approved in 2015" and that the "changes that it approved in 2017 [were] 'minor modifications.'" Roth included a copy of the interrogatory responses as an exhibit to his motion for sanctions.  Roth argued his motion for sanctions "may affect the demurrers" because it showed the City's "entire theory of the demurrer is false."  Roth contended the requested continuance "would save judicial resources [as] the demurrer and the [Code of Civil Procedure section] 128.7 motion [would be] heard at the same time."

_____

[4]     On September 25, 2020, Roth served his motion for sanctions on the City.  Due to Code of Civil Procedure section 128.7's 21-day safe harbor provision, Roth could not file the motion until October 21, 2020.

10

The City's response to Roth's special interrogatories set no. one were verified by Robert J. Rollins who stated: "The conceptual project plans . . . approved by City Planning Commission Resolution No. 15-27 show at 712 Ardmore a rear yard, with the stairs, landing, and wall at the property line." The conceptual plans show "the area where the stairs are located as not being a structure and instead being conceptually shown as a stairs and a walkway on a finish grade." "The project, including the stair steps and landing at the entry to the dwelling, were built pursuant to plans approved by the City."

Rollins stated: "During the course of constructing this project, the builder proceeded to build the landing and stepping feature as a wood framed structure . . . rather than following the construction method for the landing and steps as shown on the plans. When brought to the City Building Official's attention . . . , it was determined the use of wood structure to frame the landing and stepping feature . . . was not acceptable both from a Building and Zoning Code perspective." Thus, the City "required the builder to make the outside wall of the wood structure fire rated so it would comply with the Building Code." The builder was requested to revise the plans to reflect the change. The builder "proposed to fill the void with an industrial foam product rather than dirt. This was a practical consideration . . . as the industrial foam product proposed would be . . . resistant to fire and insects." The City directed that the void be filled "with as much foam as could be pumped into it, which may be as much as 85-90% of the void."

Rollins further stated: The City "approved this approach as a resolution to the problem and the builder implemented it as revised. The changes to the original plans amounted to a minor

11

modification of them.  The outcome in terms of the physical presence is the same as if it were steps and landing on the ground as contemplated by the initial approval.  This mid-course correction, given the circumstances, was a reasonable and fair solution for this project to proceed to completion.  The stair steps and landing at the entry to the dwelling were built on a framework that is the equivalent of finish grade."

The City, the Trans, and Ardmore each opposed Roth's ex parte request for a continuance of the hearing on the demurrers.  On October 15, 2020, the court "review[ed] the ex parte application and opposition in chambers and off the record," and denied the request to continue the hearing on the demurrers.

The court then sustained both demurrers without leave to amend.  On November 12, 2020, the court entered an order of dismissal of the FACC against the Tran family.  On November 16, 2020, the court entered a judgment of dismissal as to the City.

Roth timely appealed.

## DISCUSSION[5]

Roth argues three points on appeal.  First, he argues the trial erred in sustaining the City's demurrer to the cause of action for mandamus without leave to amend.  Second, he argues the trial court erred in sustaining the Trans' demurrer to the

---

[5]    On June 9, 2022, the City filed a request for judicial notice.  The two pleadings attached to the request for judicial notice were already filed in the trial court and part of the record on appeal.  However, as "the copy quality [of the two documents] is low," the City included a more legible copy.  We grant the request.  (Cal. Rules of Court, rule 8.252; Evid. Code §§ 452, subd. (d), and 459.)

12

public nuisance cause of action without leave to amend. Third, Roth argues the trial court erred in denying his ex parte application to continue the October 20, 2020 hearing on the demurrers.

A. *The Trial Court Properly Sustained the Demurrer Without Leave to Amend as to the Mandamus Cause of Action.*

Roth argues the court erred in finding Roth did not sufficiently plead a cause of action for mandamus. Roth further argues the claim is not moot and not barred by the failure to exhaust administrative remedies. Roth finally argues he can amend the cross-complaint to allege that the City's exercise of discretion was unlawful.

1. Standard of Review

A demurrer tests the legal sufficiency of the challenged pleading. (*Milligan v. Golden Gate Bridge Highway & Transportation Dist.* (2004) 120 Cal.App.4th 1, 5.) We review de novo a trial court's ruling on a demurrer. (*Dudek v. Dudek* (2019) 34 Cal.App.5th 154, 163 (*Dudek*).) When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*); *Beason v. Griff* (1954) 127 Cal.App.2d 382, 386–387.) The judgment of dismissal after a sustained demurrer must be affirmed if the challenged pleading fails to plead an essential element or the allegations disclose some defense or bar to recovery. (*Brown v. Crandall* (2011) 198 Cal.App.4th 1, 8.) We are to affirm if any of the grounds for demurrer raised by the defendant is well taken and disposes of the cross-complaint. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

13

We accept as true all material facts properly pleaded in the cross-complaint, but do not assume the truth of contentions, deductions, or conclusions of fact and law. (*Dudek*, *supra*, 34 Cal.App.5th at p. 163; *Estate of Holdaway* (2019) 40 Cal.App.5th 1049, 1052.) "We give the complaint a reasonable interpretation and treat the demurrer as admitting all material facts properly pleaded that are not inconsistent with other allegations, exhibits, or judicially noticed facts." (*Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 292.) The allegations that we accept as true necessarily include the contents of any exhibits attached to the complaint, and in the event of a conflict between the pleading and an exhibit, the facts contained in the exhibit take precedence over and supersede any inconsistent or contrary allegations in the pleading. (*Jibilian v. Franchise Tax Bd.* (2006) 136 Cal.App.4th 862, 864, fn. 1; *Building Permit Consultants, Inc. v. Mazur* (2004) 122 Cal.App.4th 1400, 1409; see *Schmier v. City of Berkeley* (2022) 76 Cal.App.5th 549, 553, fn. 4.)

In addition, " '[w]hen a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." ' " (*Dudek*, *supra,* 34 Cal.App.5th at p. 163.) Here, Roth shoulders the burden to show a reasonable possibility the operative complaint can be amended to state a cause of action. (*Id.* at pp. 163–164; *Community Cause v. Boatwright* (1981) 124 Cal.App.3d 888, 902). Roth can make this showing in the first instance to the appellate court. (*Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316, 322.)

14

### 2. Applicable Law

Code of Civil Procedure section 1085, subdivision (a) provides: "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station." A writ of mandate " 'will issue against a county, city, or other public body.' " (*Venice Town Council, Inc. v. City of Los Angeles* (1996) 47 Cal.App.4th 1547, 1558.)

Three basic requirements are essential to the issuance of the writ: 1) A clear, present and usually ministerial duty upon the part of the respondent (here, the City); 2) a clear, present and beneficial right in the petitioner (here, Roth) to the performance of that duty; and 3) the absence of any other plain, speedy, and adequate remedy. (*Monterey Coastkeeper v. Central Coast Regional Water Quality Control Board* (2022) 76 Cal.App.5th 1, 18; *County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 593 (*County of San Diego*).)

As to the first requirement, it is settled that traditional mandamus only lies to compel the performance of a clear, present ministerial duty. (*Sierra Club v. Department of Parks & Recreation* (2012) 202 Cal.App.4th 735, 740; *State of California v. Superior Court* (1974) 12 Cal.3d 237, 247.) "A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his [or her] own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists. Discretion . . . is the power conferred on public functionaries to act officially according to the dictates of their own judgment." (*Rodriguez v. Solis* (1991) 1 Cal.App.4th

15

495, 501–502; *AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 700 (*AIDS Healthcare*).)  "Mandamus cannot be used to compel the exercise of discretion in a particular manner or to order a specific result when the underlying decision is purely discretionary."  (*US Ecology, Inc. v. State of California* (2001) 92 Cal.App.4th 113, 138; see *AIDS Healthcare*, at pp. 701–702 ["Mandamus does not lie to compel a public agency to exercise discretionary powers in a particular manner, only to compel it to exercise its discretion in some manner"].)

As to the second requirement, as a general rule, a party must be "beneficially interested" to seek a writ of mandate. (Code Civ. Proc., § 1086.)  The requirement that the party be beneficially interested has been generally interpreted to mean that one may obtain the writ only if the person has some " 'special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large. . . .' [Citation.]  The beneficial interest must be direct and substantial."  (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165; see *Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159, 1173 (*Citizens for Amending*).)  This standard is equivalent to the federal injury-in-fact test, which requires a party to prove by a preponderance of the evidence that it has suffered an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  (*Citizens for Amending*, at p. 1173; *Associated Builders and Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 362.)

16

As to the third requirement, as a general rule, a writ "must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ. Proc., § 1086.) Where the petitioner is pursuing traditional mandamus, the " 'exhaustion requirement speaks to whether there exists an adequate legal remedy. If an administrative remedy is available and has not yet been exhausted, an adequate remedy exists and the petitioner is not entitled to extraordinary relief.' " (*Eight Unnamed Physicians v. Medical Executive Com.* (2007) 150 Cal.App.4th 503, 511.)

3.      Analysis

We review the FACC to ascertain whether it states facts sufficient to constitute a cause of action for mandamus relief.

First, we must determine if the FACC adequately alleged that the City has a clear, *ministerial duty* imposed by law.

The FACC alleged the stair structure violates height, setback, and lot coverage requirements of the conditional-use permit and the Hermosa Beach Municipal Code/zoning ordinance, as interpreted by Roth. Roth sought a writ of mandate "to compel the City of Hermosa Beach to perform its ministerial duty to cause the [Property] to comply with the conditions approved in the grant of the Conditional-Use Permit and the zoning ordinance, by ordering the removal of the stair structure and wall and enforcing its order." "Compelling removal of the foregoing violations . . . was a ministerial act of the City. It had no discretion to allow the rear-yard violations of the project as-built in late November, 2017 or early December, 2017, to continue."

Roth argues disapproving the stairway was a ministerial act; "a mere nondiscretionary operational decision implementing a policy decision." He cites *Rutgard v. City of Los Angeles* (2020)

17

52 Cal.App.5th 815, which provides, " 'A ministerial duty is an obligation to perform a specific act in a manner prescribed by law whenever a given state of facts exists, without regard to any personal judgment as to the propriety of the act.' " (*Id.* at p. 824.) Roth argues, "No personal judgment was involved.  A given state of facts existed—clear non-compliance—triggering a ministerial duty to disapprove."  The City had a ministerial duty to make "a mere operational decision and withhold approval of the stairs."

The City argues, however, that it may not be enjoined to enforce the law in any particular way.  "With a number of options available to achieve code compliance, however, even assuming the wall, stairway, and landing conflicted with the City's [M]unicipal [C]ode, the City does not have a duty to pursue any one enforcement option in particular and cannot be ordered to do so."  In support of its position, the City cites *Riggs v. City of Oxnard* (1984) 154 Cal.App.3d 526 (*Riggs*).  The Court of Appeal in *Riggs* considered appellant's claim that a "zoning violation imposes a duty upon the respondent [City of Oxnard] to issue a criminal citation and enjoin the continued use of the property." (*Id.* at p. 530.)  The *Riggs* court rejected this claim, noting that the relevant zoning ordinance's use of the term "may" indicated that prosecutorial enforcement was discretionary rather than mandatory.  (*Ibid.*)

Similarly, in this case, the Hermosa Beach Municipal Code provides the City with a variety of options for addressing the allegedly non-compliant stair structure and wall.  Section 17.74.010 specifies that violations of title 17 are "subject to the administrative penalty provisions of Chapter 1.10," i.e., the use of administrative citations and penalties; however, administrative citations/penalties "shall not prevent the use of other methods of

18

enforcement or abatement as provided by this Code, including but not limited to criminal and civil actions." (§ 1.10.010.) Section 17.74.020 provides that each person/corporation "found guilty of a violation shall be deemed guilty of a separate offense for every day during any portion of which any violation of any provision of this title is committed, continued or permitted by such person[/corporation]." A violation of conditions set forth in a conditional-use permit and development plans are also subject to the measures set out in section 17.70.010, which allows for the revocation or modification of permits. (§ 17.74.030.) Section 17.74.040 provides that the first violation is punishable by a fine of $50; a $100 fine for a second violation of the same condition within one year; a $150 fine for a third violation within one year; and a $300 fine for each additional violation of the same condition within one year; it is "a separate offense for each and every day during any portion of which any violation is committed, continued or permitted by such person and shall be punishable accordingly." (§ 17.74.040.)

Roth argues the City had no choice but to order the stair structure removed. He cites to section 1.10.050A, which provides: "Payment of a fine shall not excuse or discharge a failure to correct continuing violations nor shall it bar further enforcement action by the City." We agree with the City that this "means that payment of a fine will not prevent the City from imposing additional fines for continuing violations." We also find "further enforcement action by the City" means the City may invoke any other option available to it in the Hermosa Beach Municipal Code.

Roth contends "although [the] City can certainly issue daily administrative fines, in addition it must order removal of a non-

19

compliant structure that violates the minimum requirements of the Zoning Code." There is no section in the Hermosa Beach Municipal Code that expressly compels the City to exercise its discretion in any one particular manner, namely, to order the removal of the stair structure, as opposed to levying fines ranging from $50 to $300 for each violation of the same condition (per § 17.74.040), or subjecting the person/corporation to administrative citations and penalties or "other methods of enforcement or abatement as provided by the Code, including but not limited to criminal and civil actions" (per §§ 1.10.010, 17.74.010) or modification and/or revocation of permit (per §§ 17.70.010, 17.74.030). "Mandate will not issue to compel action unless it is shown the duty to do the thing asked for is plain and unmixed with discretionary power or the exercise of judgment." (*Unnamed Physician v. Board of Trustees* (2001) 93 Cal.App.4th 607, 618; *County of San Diego, supra*, 164 Cal.App.4th at p. 596.) Moreover, administrative citations "*may* be in addition to any criminal, civil or other legal remedy established by law which may be pursued to address violations of the Municipal Code." (§ 1.10.030, italics added.) Roth has not pleaded sufficient facts to satisfy the first requirement for this cause of action.

This cause of action also suffers from a second and irremediable defect, in that it fails to allege exhaustion of administrative remedies.

Exhaustion of administrative remedies "refers to the requirement that administrative remedies be pursued as a jurisdictional prerequisite to seeking judicial relief from an administrative action." (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1148.) In

20

general, a party must exhaust administrative remedies before resorting to the courts. (*Branciforte Heights, LLC v. City of Santa Cruz* (2006) 138 Cal.App.4th 914, 932.) Under this rule, an administrative remedy is exhausted only upon termination of all available, nonduplicative administrative review procedures. (*Id.* at pp. 932–933.) The exhaustion doctrine is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary). (*Id.* at p. 933.)

The record demonstrates Roth did not appeal from the Planning Commission's October 2015 decision granting the conditional-use permit, the January 2018 decision granting the certificate of occupancy, and the November 2017 decision approving the revised plans.

The FACC's only allegation addressing this requirement is the conclusory statement: Roth "has no speedy or adequate remedy at law" and sought a writ of mandate "to compel the City of Hermosa Beach to . . . order[] the removal of the stair structure and wall and enforc[e] its order." This is nowhere close to sufficient as no facts are alleged to support the conclusory statement. If Roth wished to appeal the Planning Commission's October 2015 decision granting the conditional-use permit/plan or its November 2017 decision approving the revised permit/plan or its January 2018 decision granting the application for certificate of occupancy, he should have filed a written appeal with the City Council to review the decisions by the Planning Commission.

21

(§§ 17.58.040, 17.56.070.)  The FACC contains no allegations that Roth pursued these remedies.

Roth argues he "can amend his allegations that City had a ministerial duty to disapprove the stair structure by further alleging that since the modifications were not minor, the Planning Commission would have to hold another public hearing to approve them."  Roth also argues he "can amend to allege that Rollins did not conform to procedures required by law.  He orally approved a major plan modification that violated the permit and Code, with no new approved written plans, and without seeking a new public hearing at the Planning Commission.  Rollins approved the stairs [with] no formality at all.  He is not the Community Development Director, and the permit gave him no authority to approve even a minor modification."

The amendments proposed by Roth would affect the first requirement for mandamus relief (i.e., whether there was a ministerial duty or abuse of discretion).  No matter what, however, Roth cannot plead facts showing he exhausted his administrative remedies.  Thus, the court did not abuse its discretion in denying leave to amend the cause of action for mandamus.

B.    *The Trial Court Properly Sustained the Demurrer to the Cause of Action for Public Nuisance Per Se Without Leave to Amend.*

Roth challenges the trial court's order sustaining the demurrer to his cause of action for public nuisance per se; he does not raise the general public nuisance theory on appeal.  We review the court's ruling de novo.  (*Dudek, supra*, 34 Cal.App.5th at p. 163.)

22

1. <u>Applicable Law</u>

Civil Code section 3479 defines a nuisance as "[a]nything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or *an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property*." (Italics added.)  A nuisance may be a public nuisance, a private nuisance, or both.  (*City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1163 (*Kruse*).)

"[A] public nuisance is not dependent upon a disturbance of rights in land but upon an *interference with the rights of the community at large*."  (*Venuto v. Owens–Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116, 124, italics added (*Venuto*).)  A public nuisance "*affects at the same time an entire community or neighborhood, or any considerable number of persons*, although the extent of the annoyance or damage inflicted upon individuals may be unequal."  (Civ. Code, § 3480, italics added.)  The remedies against a public nuisance are: "1. Indictment or information; [¶] 2. A civil action; or [¶] 3. Abatement."  (Civ. Code, § 3491.)  "Of course, not every interference with collective social interests constitutes a public nuisance.  To qualify, and thus be enjoinable [or abatable], the *interference must be both substantial and unreasonable*."  (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1105, some italics added (*Acuna*).)  It is substantial if it causes significant harm and unreasonable if its social utility is outweighed by the gravity of the harm inflicted.  (*Ibid*.)

A nuisance per se arises " 'when a legislative body with appropriate jurisdiction, in the exercise of the police power, *expressly declares a particular object or substance, activity, or circumstance, to be a nuisance. . . .* [T]o rephrase the rule, to be considered a nuisance per se the object, substance, activity or circumstance at issue must be expressly declared to be a nuisance by its very existence by some applicable law.' " (*Kruse*, *supra*, 177 Cal.App.4th at p. 1163, italics added.) Where the law expressly declares something to be a nuisance, then no inquiry beyond its existence need be made. (*Id*. at p. 1164.) Nuisances per se are so regarded because no proof is required, beyond the actual fact of their existence, to establish the nuisance. (*Ibid*.)

An action to abate a public nuisance "*must be prosecuted by a governmental entity* and may not be initiated by a private party unless the nuisance is *personally injurious* to that private party." (*County of Santa Clara v. Superior Court* (2010) 50 Cal.4th 35, 55, italics added (*County of Santa Clara*).) "A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise." (Civ. Code, § 3493.) To have standing to pursue a public nuisance abatement action, the private party must suffer an injury that is "different in kind, not merely in degree, from that suffered by other members of the public." (*Kempton v. City of Los Angeles* (2008) 165 Cal.App.4th 1344, 1349 (*Kempton*).)

2.    Analysis

The FACC's public nuisance per se claim cites to sections 17.02.010–17.02.030; these sections address the purpose of land use plans, the title of zoning ordinance for citation, and the interpretation of provisions in promoting the public health, safety, and general welfare.

24

Having incorporated the allegations in support of the cause of action for mandamus, the FACC also cites to sections 17.12.020 (setting building height cap and rear yard setback), 17.12.060 (setting permissible lot coverage percentage at no more than 65 percent), and 17.46.130 (setting cap on wall/fence height and other restrictions).  None of the cited statutory language specifies that any of the alleged violations constitute a public nuisance per se.  (See, e.g., *Jones v. Union Pacific Railroad Co.* (2000) 79 Cal.App.4th 1053, 1068 [to support a claim of nuisance per se, plaintiffs must point to a statutory provision that declares the alleged conduct a nuisance].)

In his opening brief, Roth cites to section 17.74.020 in support of his public nuisance per se claim, which provides: "Each person . . . found guilty of a violation shall be deemed guilty of a separate offense for every day during any portion of which any violation of any provision of this title is committed, continued or permitted by such person . . . and any use, occupation or building or structure maintained contrary to the provisions hereof *shall constitute a public nuisance*."  (§ 17.74.020, italics added.)  Roth contends the stair structure violates the conditional-use permit and is thus a public nuisance per se.

The problem is that the FACC itself does not cite to section 17.74.020 to support Roth's claim for public nuisance per se.  Roth in fact conceded in his August 31, 2020 opposition to the Trans' demurrer that his FACC "did not cite the [relevant] ordinances."  To support a claim of nuisance per se, Roth must point to a statutory provision that expressly declares the alleged issue to be a nuisance.  (*Beck v. Development Co. v. Southern Pacific Transportation Co.*  (1996) 44 Cal.App.4th 1160, 1207.)  Roth has failed to do so in the FACC.

Second, Roth does not allege facts to support his right to abate the public nuisance in his capacity as a private party.

Section 1.04.050C, entitled "Violations Deemed To Be a Public Nuisance," expressly provides: "In addition to the penalties . . . provided, *any condition caused or permitted to exist in violation of any of the provisions of the Code shall be deemed a public nuisance and may be summarily abated as such by the City*, and every day such condition continues shall be regarded as a new and separate offense." (Italics added.)

Generally, an action to abate a public nuisance "must be prosecuted by a governmental entity and may not be initiated by a private party unless the nuisance is personally injurious to that private party." (*County of Santa Clara*, *supra*, 50 Cal.4th at p. 55, citing Civ. Code, § 3493.) To allege standing to pursue a public nuisance abatement action, the private party must suffer an injury that is "different in kind, not merely in degree, from that suffered by other members of the public." (*Kempton*, *supra*, 165 Cal.App.4th at p. 1349.) "A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise." (Civ. Code, § 3493; see *Kempton*, at p. 1349.) Put another way, to establish standing, private plaintiffs must allege that both they and the public were injured, albeit in different ways or in different degree, by the alleged public nuisance.

In *Kempton* for instance, a fence erected upon City property blocked the sidewalk area in a public right-of-way and blocked the property owners' sightlines upon entering and exiting their garage along the street, "causing 'fear of being in a vehicle collision, fear of hitting a pedestrian." (*Kempton*, *supra*, 165 Cal.App.4th at pp. 1349–1350.) The reviewing court in

26

*Kempton* found the fence was a public nuisance as it affects at the same time an entire community or neighborhood (the fence blocks the sidewalk area in a public right-of-way) and also affects the property owners (the fence blocks their sightline when entering/exiting their garage).  (*Id.* at pp. 1348–1350.) "Interference with the ingress and egress to and from a public street constitutes 'both a private and public nuisance' and may constitute *a special injury* actionable by an individual."  (*Id.* at p. 1349, italics added.)

In the FACC, however, Roth has not pleaded facts showing the stair structure caused "an interference with the rights of the community at large" (*Venuto*, *supra*, 22 Cal.App.3d at p. 124) or affected "at the same time an entire community or neighborhood, or any considerable number of persons" (Civ. Code, § 3480).  (See *Acuna*, *supra*, 14 Cal.4th at p. 1103.)  Roth merely pleaded that he suffered "special injury" because he lived next door to the stair structure that did not have the required rear yard setback from his neighbor's stair structure.  Without facts alleging how the stair structure caused any interference with the rights of the community or neighborhood at large and how that public injury compared with the harm suffered by Roth himself, Roth has failed to sufficiently plead he suffered "special injury" from the alleged nuisance.

Finally, Roth shoulders the burden to show a reasonable possibility the defect in the FACC can be cured by amendment; if it can, the trial court abused its discretion in sustaining the demurrer without leave to amend.  (*Dudek*, *supra*, 34 Cal.App.5th at pp. 163–164.)

27

Roth has not proposed an amendment that would cure the defects and has not provided any argument or citation to the law in this regard.  A party is required in his or her brief to "[s]tate each point under a separate heading or subheading summarizing the point, and *support each point by argument and, if possible, by citation of authority*."  (Cal. Rules of Court[6], rule 8.204(a)(1)(B), italics added; see *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 (*Pizarro*).)  An appellant who does not provide adequate legal authority and analysis to support a contention forfeits that contention.  (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948; *Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.)  This contention is forfeited.

C.    *The Court Properly Denied Roth's Ex Parte Request to Continue the Hearing on the Demurrers.*

Roth contends the trial court erred in failing to continue the demurrers to the date of his sanctions motion because "that motion showed [the] City's demurrer presented false arguments with no evidentiary support."  He argues the court "could have issued the [nonmonetary] sanction of not allowing [the] City to press a theory on demurrer which has no evidentiary support."  He further argues he "had that proof but was denied the ability to allege it or to amend to allege it," resulting in prejudicial error.

---

[6]    All further undesignated rule references are to the California Rules of Court.

1.    Standard of Review

Trial courts generally have broad discretion in deciding whether to grant a request for a continuance.  (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527.)  An abuse of discretion results in reversal only when the denial of a continuance results in the denial of a fair hearing, or otherwise prejudices a party.  (*Ibid*.)  A reviewing court may not disturb the exercise of discretion by a trial court in the absence of a clear abuse thereof appearing in the record.  (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984.)  The burden rests on the complaining party to demonstrate from the record that such an abuse has occurred.  (*Id*. at p. 985.)

2.    Applicable Law

The right to seek ex parte relief is subject to strict procedural and subject matter limitations.  Rule 3.1202, subdivision (c) provides: "An applicant must make an affirmative factual showing in a declaration containing competent testimony based on personal knowledge of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte." (Rule 3.1202(c).)

3.    Analysis

We preliminarily note Roth does not support his contentions as to this issue on appeal with citation to legal authority or case law; his opening brief does not provide any information as to the applicable standard of review.  A party is required in his or her brief to "[s]tate each point under a separate heading or subheading summarizing the point, and *support each point by argument and, if possible, by citation of authority*."  (Rule 8.204(a)(1)(B), italics added; see *Pizarro*, *supra*, 10 Cal.App.5th at

29

p. 179.)  A reviewing court has no obligation to "develop appellants' argument for them."  (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830; see *Pizarro* at p. 179 [an appellant forfeits his argument if "he did not sufficiently apprise the court of what argument he was trying to make"]; see *Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 948 ["We are not required to make an independent, unassisted study of the record in search of error [in] a trial court's action."].)  Roth's reply brief is no better, as it fails to address or mention the issue.  He has forfeited this issue.

Alternatively, we find the sanctions motion was immaterial to the court's consideration of the demurrers.  A demurrer tests the legal sufficiency of the challenged pleading—here, Roth's FACC—and Roth's arguments about the City's demurrer not "be[ing] supported by the evidence" are misplaced.  An analysis of the City's demurrer to the FACC does not rely on a review of the evidence, but rather, a review of the operative complaint or cross-complaint to determine whether it states facts sufficient to constitute a cause of action.  (*Blank, supra,* 39 Cal.3d at p. 318.)

We find no error.

## DISPOSITION

The judgment and order are affirmed.  Costs are awarded to respondents.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

STRATTON, P. J.

We concur:

GRIMES, J.

HARUTUNIAN, J.*

---

*        Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

31