Filed 3/20/26  Abioye v. Lee CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ADEDAYO ABIOYE,<br><br>        Plaintiff and Appellant,<br>v.<br>RAYMOND OCTAVUS LEE, et al.,<br><br>        Defendants and Respondents. | A171356<br><br>(Alameda County<br> Super. Ct. No. 24CV064677) |

Plaintiff Adedayo Abioye, representing himself, appeals from the trial court's order sustaining without leave to amend demurrers brought by the four defendants in this action and dismissing his complaint with prejudice. Abioye challenges the court's rulings on the demurrers.  Additionally, Abioye argues the court erred in vacating one of the defendant's defaults, vacating the hearings on his motions to strike, and declaring him a vexatious litigant. We affirm.

# I. BACKGROUND[1]

## A. Facts

Defendant Raymond Lee has known Abioye's family for 25 years. In April 2015, Raymond gifted Abioye $180,000 to help him purchase property, of which Abioye became the sole owner. In December 2015, unbeknownst to Abioye, his father, Moses Abioye, and Raymond signed a loan agreement establishing the terms of a loan commencing in April 2015. In the agreement, Raymond loaned Moses $180,000 used as the down payment to purchase the property. The loan accrued no interest for the first six months then began to accrue interest if it was not repaid. In October 2019, Raymond and his wife, Shanna Lee (collectively, Lees), went to one of Abioye's properties and through intimidation, extortion, and fraud, induced Moses to sign an addendum to the loan agreement which increased the interest rate. Abioye was unaware of the loan agreement and the addendum until October 2020.

At some point, a dispute arose regarding the $180,000. Raymond claimed it was a loan, not a gift, and told people that Abioye was a party to, and in default on, a loan. In March 2020, Raymond texted Abioye and "represented/communicated that he was acting on behalf of" defendant Corporation of the President of the Oakland California Stake, The Church of Jesus Christ of Latter-day Saints (Church). He did so "with several verbal communications and by sending [Abioye] a picture of a scripture verse with life and relationship advice." Raymond demanded that Abioye cancel the refinance of the property. In May 2020, Abioye hired Raymond and his

---

[1] We take facts from the complaint and attached exhibits and matters which have been judicially noticed. (See *Rodriguez v. City of Los Angeles* (2025) 116 Cal.App.5th 488, 495.) We refer to some parties by their first names for clarity and intend no disrespect.

company, defendant Visuals, Inc. (Visuals), as his financial advisor and made Raymond a managing member of Pinnacle 24 Investments LLC and Abioye's properties. In October 2020, Raymond emailed Abioye the 2015 loan agreement and the 2019 addendum.

## B. Prior Lawsuits

In October 2020, Abioye's father sued him (no. RG20078149; first lawsuit). Abioye filed a first amended cross-complaint (FACC) against numerous cross-defendants, including Raymond and Visuals.[2] He alleged 13 causes of action, including breach of fiduciary duty and slander. The facts alleged in the FACC recite the same facts summarized above. Namely, that Raymond gifted Abioye $180,000 to purchase a property and, subsequently and unbeknownst to Abioye, Raymond and Moses signed the 2015 loan agreement and 2019 addendum purporting to identify the gift to Abioye as a loan to Moses. The breach of fiduciary duty cause of action alleged that Raymond and Visuals, among others, acted as Abioye's fiduciaries and breached their fiduciary duty to him.

In March 2022, the trial court granted Raymond's motion for judgment on the pleadings as to each cause of action in the FACC except for slander. As to the breach of fiduciary duty cause of action, the court stated the FACC failed to allege any underlying confidential or fiduciary relationship between Abioye and Raymond that would give rise to such a claim. The court concluded the allegations in the FACC were insufficient to establish a fiduciary relationship with Raymond and, therefore, the court granted the motion as to this cause of action.

In May 2022, Abioye dismissed his FACC as to Raymond. The trial court subsequently granted Visuals' motion to strike the FACC and entered

---

[2] Shanna and the Church were not named as cross-defendants.

3

judgment dismissing Visuals from the action without prejudice. In June 2023, the court granted Abioye's motion for leave to amend his cross-complaint only insofar as Abioye sought to assert a claim for slander against Raymond. It appears that Abioye never did so.

Instead, in July 2023, Abioye filed a new lawsuit against only Raymond asserting a single cause of action for slander (no. 23CV037590; second lawsuit). He alleged substantially similar facts as he had done in the first lawsuit. In April 2024, the trial court sustained Raymond's demurrer to Abioye's complaint without leave to amend on the ground that the slander claim was barred by the statute of limitations and dismissed the complaint with prejudice.

## C. The Present Litigation

In February 2024, while the second lawsuit was still pending, Abioye filed the operative complaint alleging a single cause of action for breach of fiduciary duty (no. 24CV064677). He named as defendants Raymond, Shanna, Visuals, and the Church.

The Lees and Visuals demurred to Abioye's complaint arguing the breach of fiduciary duty cause of action failed to state facts sufficient to constitute a cause of action and was barred by the doctrine of res judicata and the statute of limitations. Abioye opposed both demurrers.

In June 2024, the Church filed a demurrer to Abioye's complaint on the grounds that the breach of fiduciary duty claim failed to state facts sufficient to constitute a cause of action. The Church argued there were no facts alleged to properly demonstrate that the Church owed a fiduciary duty to Abioye or that Raymond acted within the scope of any agency relationship with the Church. Additionally, the Church purported to join in the Lees'

4

demurrer, arguing that it could only be liable, if at all, through Raymond's conduct.

In August 2024, the trial court heard the three demurrers together. The court subsequently issued an order which, among other rulings, sustained defendants' demurrers without leave to amend and dismissed Abioye's complaint with prejudice. Abioye appealed.[3]

## II. DISCUSSION

### A. *Appellate Principles*

It is "a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) " 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.' " (*Id.* at p. 609.) " 'This means that an appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his claim. The appellant must present an adequate argument including citations to supporting authorities and to relevant portions of the record.' " (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 619–620 (*L.O.*); see also *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*) [" 'We are not bound to develop appellants' arguments for them.' "].) "When a point is

---

[3] While the record does not include a formal judgment of dismissal, the trial court's order is an appealable final judgment as it sustained each defendant's demurrer without leave to amend and stated that Abioye's complaint was dismissed with prejudice. Therefore, it effectively terminated the action. (See *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699; *TruConnect Communications, Inc. v. Maximus Inc.* (2023) 91 Cal.App.5th 497, 505, fn. 3.)

asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' " (*In re S.C.* (2006) 138 Cal.App.4th 396, 408; see also *Cahill*, at p. 956 [" 'The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' "].)

In their brief, an "appellant must '[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority.' [Citations.] Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading." (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179.) "Although we address the issues raised in the headings, we do not consider all of the loose and disparate arguments that are not clearly set out in a heading and supported by reasoned legal argument." (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1294.)

Moreover, while demonstrating error is a prerequisite to a successful appeal, it is not sufficient to warrant reversal. The California Constitution " 'prohibits a reviewing court from setting aside a judgment due to trial court error unless it finds the error prejudicial.' " (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108.) Error is prejudicial when " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.) The appellant bears the burden of demonstrating prejudice from the error. (See *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069.)

Self-represented litigants must comply with these rules. (*Burnete v. La Casa Dana Apartments* (2007) 148 Cal.App.4th 1262, 1267 [" ' "the in propria

persona litigant is held to the same restrictive rules of procedure as an attorney" ' "]; see *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.)

Various deficiencies in Abioye's briefing make it difficult for us to consider his claims. Nonetheless, to the extent we can, we address each argument he identifies by a heading or subheading. These arguments challenge orders: (1) vacating the Church's entry of default, (2) sustaining defendants' demurrers, (3) vacating hearings on his motions to strike, and (4) declaring him a vexatious litigant.[4]

## B. Church's Default

Abioye challenges the trial court's order vacating the default entered against the Church.

### 1. Additional Facts

Prior to the hearing on the Church's demurrer, the trial court requested supplemental briefing on whether default had been entered against the Church and, if so, whether it should be set aside. The record regarding whether the court had entered the Church's default is anything but

_____

[4] There are five respondents, two of whom filed respondent's briefs: Raymond and the Church. Attorney Geva Baumer prepared and filed Raymond's brief. As he was in the trial court, though, Raymond is self-represented on appeal. Baumer is counsel of record for Visuals, Raymond's company. Abioye accurately points out that there has not been filed a substitution of attorney substituting Baumer as attorney for Raymond, and he asserts we should construe the brief as being filed by Visuals. Based on this, he contends Raymond and Shanna failed to file respondent's briefs. Whether we consider the brief as being submitted by Raymond or Visuals is irrelevant to our determination of the issues raised on appeal, because even when no respondent's brief is filed we must still determine whether any of the appellant's claims of error are supported. (See Cal. Rules of Court, rule 8.220(a)(2); see also *Griffin v. The Haunted Hotel, Inc.* (2015) 242 Cal.App.4th 490, 505 ["if a respondent in a civil case files no brief at all, we still examine the record to see if it supports any claims of error made by the appellant"].)

straightforward but, for purposes of this appeal, is not determinative of the outcome.

In May 2024, Abioye submitted various requests for entry of the Church's default. While the trial court clerk rejected multiple requests, explaining Abioye had failed to demonstrate proper service, the clerk also appears to have entered the Church's default twice after Abioye purported to show the Church was properly served. Yet in some other requests submitted by Abioye, the court clerk indicated that default was not entered and routed the request to a judge.

The Church argued that any default entered against it should be set aside because the initial attempted service of process on it was defective. But if service was valid, the Church contended the default should be set aside under either the discretionary relief provision of Code of Civil Procedure[5] section 473, subdivision (b) (section 473(b)), based on the Church's excusable neglect or the statute's mandatory relief provision due to attorney mistake. David Kimball, the Church's Stake President, submitted a declaration explaining the attempts of service of process on him. The documents were first served on his wife on April 21, 2024, when he was not home. The next day, some documents were personally served on him but they did not include a copy of the complaint. On May 9, he received a copy of the complete service documents in the mail. At various times, he forwarded these documents to the Church's attorneys.

Christopher Hill, the Church's attorney, submitted a declaration explaining that the Church's counsel had interviewed Kimball regarding when he first was served with the summons and complaint to determine the deadline to respond. Based on the information provided by Kimball, service

---

[5] Undesignated statutory references are to the Code of Civil Procedure.

8

on his wife would be effective only when accompanied by mail delivery, which Kimball received on May 9, 2024.  They could not confirm the date of mailing but determined the earliest date it could have been was April 22, making June 3 the deadline to respond to the complaint.  Based on the mail delivery, counsel had no discussion with Kimball regarding the April 22 personal service on him.  During Hill's meet and confer with Abioye in preparation for filing the demurrer, Abioye advised the Church was in default, of which Hill was unaware.  The Church filed a motion to set aside the default.  After the trial court clerk indicated that the request for default had been rejected because the court was not satisfied the Church had been properly served, the Church proceeded by filing its demurrer on June 10.

The trial court considered the issue of the Church's default in conjunction with the hearing on defendants' demurrers.  The court explained that the "record as to the status of the Church as a party in this case is extremely mixed."  But assuming previous defaults were properly entered, the court concluded that it "would be required" to vacate them pursuant to the "mandatory relief" provision of section 473(b), based on the declaration from attorney Hill.  The court ordered that any default previously entered against the Church be set aside and vacated.

### 2. Analysis

Section 473(b) provides for two distinct types of relief.  (*Luri v. Greenwald* (2003) 107 Cal.App.4th 1119, 1124.)  The discretionary relief provision provides, "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."  (§ 473(b).)  Section 473(b) also contains a provision for mandatory relief, which states, "Notwithstanding any

9

other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to the attorney's mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against the attorney's client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against the attorney's client." Section 473(b) must be liberally construed and policy favors that actions be determined on their merits. (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 256.) " ' "[I]f the prerequisites for the application of the mandatory provision of section 473, subdivision (b) exist, the trial court does not have discretion to refuse relief." ' " (*Talbott v. Ghadimi* (2025) 109 Cal.App.5th 967, 977.)

Assuming a default was entered against the Church, Abioye did not demonstrate the trial court prejudicially erred in vacating it. The Church accurately observes that Abioye references only a court's "discretion" to vacate entry of default—the first provision of section 473(b). He does not address the provision on which the trial court relied—the mandatory relief provision. Abioye cites neither the mandatory relief provision of section 473(b) nor any legal authority regarding mandatory relief. He does not lay out arguments why the prerequisites for the application of the mandatory relief provision were not met. Therefore, we conclude that Abioye waived any challenge to the trial court vacating entry of default. (See *L.O.*, *supra*, 96 Cal.App.5th at pp. 619–620; *Cahill*, *supra*, 194 Cal.App.4th at p. 956; *In re S.C.*, *supra*, 138 Cal.App.4th at p. 408.) Absent reasoned argument regarding the mandatory relief provision of section 473(b) and citation to supporting

10

legal authorities from Abioye, we fall back on the presumption that the judgment is correct.

## C. Defendants' Demurrers

Abioye challenges the trial court's order sustaining defendants' demurrers without leave to amend.  The trial court determined, as relevant here, that the breach of fiduciary duty cause of action was barred by res judicata and collateral estoppel as to all defendants.

### 1. General Legal Principles and Standard of Review

The doctrine of res judicata—claim preclusion—prohibits a second suit between the same parties on the same cause of action.  (*Robinson v. Southern Counties Oil Co.* (2020) 53 Cal.App.5th 476, 481.)  Res judicata arises if a second suit involves (1) the same cause of action (2) between the same parties or parties in privity with them (3) after a final judgment on the merits in the first action.  (*Id.* at p. 482.)  If res judicata is established, it bars relitigation of the claim altogether.  (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.)  A "final judgment serves as a bar not only to the issues litigated but to those that could have been litigated at the same time."  (*Takahashi v. Board of Education* (1988) 202 Cal.App.3d 1464, 1481.)

We review the trial court's order sustaining a demurrer de novo and determine whether the complaint states a cause of action on any available legal theory.  (*Brown v. Deutsche Bank National Trust Co.* (2016) 247 Cal.App.4th 275, 279 (*Brown*).)  We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law.  (*Ibid.*)  A court may sustain a demurrer on res judicata grounds if all facts necessary to show the action is barred are within the complaint or subject to judicial notice.  (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1191.)  When, as here, " 'the trial court sustains a

11

demurrer without leave to amend, we review the determination that no amendment could cure the defect in the complaint for an abuse of discretion. [Citation.]  The trial court abuses its discretion if there is a reasonable possibility that the plaintiff could cure the defect by amendment.  [Citation.] The plaintiff has the burden of proving that amendment would cure the legal defect, and may meet this burden on appeal.' " (*Brown*, at p. 279.)

### 2. Analysis

Abioye's challenge to the trial court's rulings fails for the mere reason that he fails to cite to legal authority and, in most instances, fails to cite to the record.  While the court relied, in part, on the doctrines of res judicata and collateral estoppel, Abioye does not cite any legal authority regarding these topics.  Therefore, he waived his challenge.  (See *L.O.*, *supra*, 96 Cal.App.5th at pp. 619–620; *Cahill*, *supra*, 194 Cal.App.4th at p. 956; *In re S.C.*, *supra*, 138 Cal.App.4th at p. 408.)  Complicating matters further, in his argument section titled "Ruling/Order on Defendants' Demurrers," for the most part Abioye does not distinguish between the different defendants, other than focusing on Raymond when he does identify a specific defendant.

We also reject Abioye's challenge on the merits because Abioye's claim is barred by res judicata.  Abioye's complaint alleges a single cause of action for breach of fiduciary duty.  He does not appear to dispute that he previously brought a virtually identical claim for breach of fiduciary duty against Raymond and Visuals in the first lawsuit or that the other defendants here are in privity to those named in the first lawsuit.  Abioye's only challenge to the application of res judicata is his assertion that there was no final determination in the first lawsuit because he voluntarily dismissed Raymond without prejudice.  We disagree.

In the first lawsuit, Abioye's FACC alleged 13 causes of action, including breach of fiduciary duty, against multiple cross-defendants. The trial court granted Raymond's motion for judgment on the pleadings without leave to amend as to 12 causes of action—all except for the slander claim. As to the breach of fiduciary duty cause of action, the court determined the FACC failed to properly allege a fiduciary relationship between Abioye and Raymond. Subsequently, Abioye dismissed his FACC without prejudice as to Raymond. But at the time, the only claim remaining against Raymond was slander. Therefore, Abioye's voluntary dismissal of the slander claim does not affect the application of res judicata on the breach of fiduciary duty claim in the present lawsuit. (See *Paniagua v. Orange County Fire Authority* (2007) 149 Cal.App.4th 83, 89 [" 'A plaintiff's voluntary dismissal of his action has the effect of an absolute withdrawal of his claim and leaves the defendant as though he had never been a party.' "].)

To further support his contention that there was no final determination in the first lawsuit, Abioye points to a dismissal in a separate lawsuit he filed and argues it demonstrates his complaint here is not barred. In case number 23CV031958, Abioye sued Crystal Linscombe and Investment Finance Partners LLC (Linscombe case). In February 2024 in that action, the trial court granted Abioye's motion to dismiss four of his causes of action, including breach of fiduciary duty.[6] According to the complaint in the Linscombe case, Abioye sued his mortgage broker for alleged conduct in 2021

---

[6] On May 2, 2025, Abioye filed a request for judicial notice of February 2, 2024 court minutes in the Linscombe case. Respondents did not oppose the request. The request for judicial notice is granted. (See Evid. Code, § 452.) As Abioye points out, in the present lawsuit, Raymond filed a notice identifying five related cases, including the Linscombe case. That lawsuit did not involve the same parties as the present lawsuit.

13

related to their fiduciary relationship in handling his loan application. Abioye fails to explain how voluntarily dismissing the breach of fiduciary duty cause of action in the Linscombe case means that there was no final determination in the first lawsuit such that res judicata does not apply here.

As to Shanna and Visuals, Abioye does not direct any argument specifically to these defendants. Therefore, he waived any challenge to the trial court's rulings on Shanna's and Visuals' demurrers to the extent any contentions would be different from those discussed above. (See *L.O.*, *supra*, 96 Cal.App.5th at pp. 619–620; *Cahill*, *supra*, 194 Cal.App.4th at p. 956; *In re S.C.*, *supra*, 138 Cal.App.4th at p. 408.)

As to the Church, the trial court sustained its demurrer on three separate grounds: (1) the complaint failed to allege facts to impose a fiduciary duty on the Church or facts demonstrating how the Church breached any fiduciary duty; (2) the complaint's allegations that Raymond was acting on behalf of the Church were insufficient to establish an agency relationship or a fiduciary duty owed by the Church to Abioye because there were no allegations showing conduct by the Church that Raymond was acting as it agent; and (3) the Church's liability would be derivative of Raymond's liability and because the claims against Raymond were barred by res judicata and collateral estoppel, so too were any claims based on the Church's derivative liability for Raymond's acts. As best we can discern, Abioye only challenges the trial court's conclusion regarding res judicata and collateral estoppel. Because Abioye does not challenge the two alternative bases for the trial court's ruling, reversal is unwarranted.

To the extent Abioye asserts that the complaint states facts sufficient to establish a fiduciary relationship between him "and the [d]efendants" and to "show that the defendants breached their fiduciary duties" to him, Abioye

14

again provides no reasoned argument or citations to legal authority. For example, he fails to cite authority regarding what creates a fiduciary relationship and fails to provide argument demonstrating how his complaint sufficiently alleges facts demonstrating a fiduciary relationship between him and the Church or its breach. (See, e.g., *O'Neal v. Stanislaus County Employees' Retirement Assn.* (2017) 8 Cal.App.5th 1184, 1215 [" 'The elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) its breach, and (3) damage proximately caused by that breach.' "].) Nor does Abioye provide reasoned argument or citation to authority regarding whether Raymond acted as an agent of the Church. Contrary to Abioye's assertion, the Church has not "judicially admitted that Raymond . . . was its agent."[7] Abioye's conclusory statements that the complaint is sufficient, without more, do not demonstrate trial court error. In sum, Abioye failed to meet his burden of demonstrating the trial court committed error in sustaining defendants' demurrers.

Finally, the trial court sustained defendants' demurrers without leave to amend. Abioye does not raise this issue in a separate heading or subheading and, therefore, he forfeited any challenge to this portion of the court's ruling. (See *Pizarro v. Reynoso*, *supra*, 10 Cal.App.5th at p. 179.) Even were we to "consider all of the loose and disparate arguments" (*Provost*

---

[7] Abioye quotes portions of the Church's demurrer. The demurrer included a heading titled, "Because the Church can only be liable to plaintiff through Raymond's conduct, if at all, the Church joins in Raymond's demurrer and incorporates herein all of the grounds for demurring asserted therein." (Capitalization and boldface omitted.) In arguing that the Church was entitled to the benefit of Raymond's exoneration, the Church stated, "Either Raymond was the Church's agent, in which case the Church is not liable for Raymond's inactionable conduct, or Raymond was not the Church's agent, in which case there is no fact pled against the Church for direct fiduciary duty and breach."

15

*v. Regents of University of California*, *supra*, 201 Cal.App.4th at p. 1294) scattered throughout his brief which could be construed as asserting that leave to amend should be granted, we reject his contention.

Abioye suggests that there were new and different breaches of fiduciary duties which occurred after he filed his FACC in the first lawsuit. (See *Allied Fire Protection v. Diede Construction, Inc.* (2005) 127 Cal.App.4th 150, 155 ["Res judicata is not a bar to claims that arise after the initial complaint is filed. . . . The general rule that a judgment is conclusive as to matters that could have been litigated 'does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated.' "].) For example, Abioye states: "There are plenty of witnesses who can attest to the clergy/penitent relationship between me and the [d]efendants;" "there are numerous incidents which make res judicata and collateral estoppel inapplicable;" there were "breaches of fiduciary duties that occurred subsequently to the filing of the cross-complaint;" Raymond threatened "to sue me" for blackmail; and incidents from April 2024 demonstrated defendants' fraudulent misrepresentations claiming they did not meet and confer even though they had, and claiming the loan agreement was valid and enforceable. Overall, Abioye asserts there "is a strong possibility that [he] can and, if relief is granted, will allege facts under which recovery can be obtained."

Abioye fails to provide legal authority and citations to the record demonstrating how he can amend the complaint to sufficiently state a breach of fiduciary duty cause of action which is not barred by res judicata and which sufficiently alleges facts meeting the elements of such a claim, including the existence of a fiduciary relationship(s). (See *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 44 ["Where the

appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend."].)  Because Abioye failed to meet his burden of demonstrating a reasonable possibility that he could cure the defects in his complaint if given the opportunity to do so, the trial court did not abuse its discretion in sustaining the demurrers without leave to amend. (See *Brown*, *supra*, 247 Cal.App.4th at p. 279.)

### D. Abioye's Motions to Strike

Abioye filed seven motions to strike: three motions to strike the demurrers filed by the Lees, Visuals, and the Church; three motions to strike Raymond's, Shanna's, and Visuals' declarations submitted in support of an automatic extension to file responsive pleadings; and a motion to strike Raymond's motion to strike portions of the complaint.  The motions were brought on various grounds, including that the challenged demurrers, motions, and declarations were irrelevant, false, or improper, were not drawn in conformity with the law, and violated the rules of court.  In its August 2024 challenged order, the trial court advanced the hearings on Abioye's motions to the same date as the defendants' demurrers and vacated his motions.  The court determined Abioye's motions to strike were "moot in light of [its] order."  It also "observe[d] that the proper method of opposing a demurrer is to file an opposition to the demurrer, which [Abioye] has done. Filing seven collateral motions to strike creates unnecessary congestion on the [c]ourt's already congested calendars."  Abioye argues his motions to strike "should have been heard and granted."

17

Any party may move to strike a pleading, which means a demurrer, answer, complaint, or cross-complaint. (§ 435, subds. (a)(2), (b)(1).)[8] A court may strike out any irrelevant, false, or improper matter in any pleading, and all or any part of a pleading not drawn in conformity with state laws or rules of court. (§ 436.) The grounds for a motion to strike must appear on the face of the challenged pleading or from matters properly subject to judicial notice. (§ 437.) We review a ruling on a motion to strike for abuse of discretion. (*Cal-Western Business Services, Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304, 309.)

Abioye fails to provide reasoned argument supported by relevant legal authority demonstrating why the trial court's decision constituted a prejudicial abuse of discretion. The court determined that Abioye's motions were moot given the rulings it made in the challenged order, that is, the rulings on defendants' demurrers. Abioye has not demonstrated why they were not moot. Nor has he demonstrated that had the trial court considered and ruled on his motions, it is reasonably probable that there would have been a result more favorable to him. (See *Cassim v. Allstate Ins. Co.*, *supra*, 33 Cal.4th at p. 800.) Instead, he merely offers conclusory statements without support. For example, he asserts that his "motions to strike had viable grounds on which the [d]efendants' demurrers should have been stricken." And he "presented the court with just grounds and good cause to strike the defendants' pleadings or overrule the demurrer[s]." But he fails to explain how. Accordingly, we reject his challenge.

---

[8] While section 435 specifically contemplates a motion to strike a demurrer, we observe that it does not provide for a motion to strike a motion or a declaration. (See § 435, subds. (a)(2), (b)(1), (3).)

*E. Vexatious Litigant Order*

In July 2024, the trial court granted Raymond's motion for an order declaring Abioye a vexatious litigant and entered a prefiling order pursuant to section 391.7 prohibiting Abioye from filing any new litigation in propria persona without first obtaining leave of the presiding judge or justice.[9]  In his opening brief, Abioye attempts to argue that the vexatious litigant order should be reversed.  We may not consider his contention because he did not appeal from that order.

The trial court issued its order declaring Abioye a vexatious litigant on July 26, 2024.  This prefiling order pursuant to section 391.7 was immediately appealable as an order granting an injunction.  (See *Luckett v. Panos* (2008) 161 Cal.App.4th 77, 85, 90; *In re Marriage of Rifkin & Carty* (2015) 234 Cal.App.4th 1339, 1347.)  Abioye's notice of appeal specifically identified, and attached, the August 30, 2024 order ruling on defendants' demurrers, the Church's entry of default, and Abioye's motions to strike as the order from which the appeal was taken.  The notice of appeal did not identify the vexatious litigant order, which was issued more than one month earlier.  " 'Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from.' " (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170; see also *Morton v. Wagner* (2007) 156 Cal.App.4th 963, 967 ["it is the notice of appeal that defines the scope of the appeal by identifying the particular judgment or order being appealed"]; Cal. Rules of

---

[9] In the trial court, Abioye represented himself.  The notice of appeal was prepared and signed by an attorney.  This court ultimately determined that the requirement of a prefiling order did not apply because Abioye was represented by counsel when the appeal was initiated.  Before briefing commenced, Abioye filed a substitution of attorney form to substitute himself in place of the attorney.

Court, rule 8.100(a)(2) [notice of appeal "is sufficient if it identifies the particular judgment or order being appealed"].) Abioye confirms this in his opening brief, stating his "appeal is from the judgment/order filed on 8/30/24." Accordingly, because Abioye "specifically and clearly excluded the [order] from the subject of the appeal" (*Morton*, at p. 967), we lack jurisdiction to consider an appeal from the vexatious litigant order.

## III. DISPOSITION

The August 30, 2024 order is affirmed. Respondents are entitled to their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____
LANGHORNE WILSON, J.

WE CONCUR:

_____
BANKE, Acting P. J.

_____
SMILEY, J.

*Abioye v. Lee / A171356*

20